No. 64,110

STATE OF KANSAS, *Appellee*, v. ANTHONY L. DAVIS, *Appellant.*

(802 P.2d 541)

Opinion filed December 7, 1990. ▮

*Reid T. Nelson*, assistant appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with him on the brief for appellant.

*Bruce L. Stewart*, assistant district attorney, argued the cause, and *Nola Foulston*, district attorney, and *Robert T. Stephan*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Anthony L. Davis appeals his convictions for first-degree felony murder (K.S.A. 21-3401), aggravated robbery (K.S.A. 21-3427), and aggravated arson (K.S.A. 21-3719). Davis contends that (1), because there is not sufficient evidence to support his conviction of the underlying felony of aggravated robbery by threat, which was not alleged in the information, his felony murder conviction is invalid, and (2) the trial court erred by failing to instruct on involuntary intoxication.

The body of Willie Bryant, the victim, was discovered in his burned apartment on April 11, 1988. Police officers and fire-fighters were called to the scene. The same day, Anthony Davis was interviewed by the Wichita Police Department. The following day, Davis was charged with one count of first-degree murder (K.S.A. 21-3401), one count of felony murder (K.S.A. 21-3401), one count of aggravated arson (K.S.A. 21-3719), and one count of aggravated robbery (K.S.A. 21-3427).

At trial, Rose Thomas, Anthony Davis' girlfriend, testified that on April 10, 1988, she accompanied Davis to visit his 91-year-old great-grandfather, Willie Bryant, and show Bryant their new-born child. Thomas stated that before they went to Bryant's house both she and Anthony had used cocaine. She testified that after she was introduced to Bryant, Davis asked him for money to buy milk and Pampers for the baby. When Bryant gave them $10.00, she and Davis noticed Bryant's wallet contained a large sum of money. Davis later testified it was during this first visit that he stole Bryant's gun.

After leaving Bryant's house, Thomas and Davis went to a drug house where Davis traded the stolen gun and the money given to buy milk for cocaine. They returned to Thomas' house and

used the cocaine. Davis testified it was at this point in time that he began craving more cocaine.

Davis stated that he and Thomas returned to Bryant's house about 9:00 p.m. to talk Bryant out of more money to buy cocaine. The conversation was friendly until Bryant refused to give them more money. When Davis offered to work on Bryant's car or paint his house for money, the great-grandfather again refused and explained he had bills to pay.

After Bryant refused, Thomas testified that Davis went to the bathroom. Thomas stated that, when Davis returned from the bathroom, he struck his great-grandfather, who was sitting in a chair, with a bucket of paint. The great-grandfather yelled and fell from the chair to the floor. Thomas testified she told Davis to stop beating Bryant as it was not worth it. She said Davis picked his great-grandfather up off the floor, said though he needed the money, he was sorry, and he did not mean it, and placed Bryant on the couch. Thomas said that, after Davis had placed Bryant on the couch, he struck him three or four times on the head with a tire jack. Davis testified that, when the pain came back into his head, he picked up a tire jack and struck him with it. While Davis was hitting Bryant, Bryant's money fell out of his pocket onto the floor.

Thomas testified that, after Davis struck Bryant with the tire iron, he went to the kitchen, got a paper bag, and in an effort to destroy the evidence, started several fires. Davis testified that, after Thomas lit a fire in the kitchen, she suggested burning the house and gave the burning bag to him. Davis admitted he set some of the fires. Thomas testified Davis told her to pick up the money as they left. Thomas testified that, as she left the apartment, she saw Bryant on the floor trying to get up. Both stated that, after leaving the house, they returned to the drug house and purchased and used cocaine.

At trial, Dr. William Eckert, a forensic pathologist, testified that Willie had received two types of injuries—a thermal injury from the fire and five trauma injuries to the head and scalp. The autopsy indicated Willie had died as a result of smoke inhalation and carbon monoxide asphyxiation.

At the beginning of the trial, Davis' counsel informed the trial judge that the voluntary intoxication defense would not be ben-

eficial to his client and no one from Larned State Hospital would testify that Davis was insane at the time the crime was committed. After all of the evidence was submitted, Davis decided to rely on the insanity defense and did not request a jury instruction on voluntary intoxication. Though both the prosecution and Davis' counsel requested separate verdict forms be submitted to the jury on the charges of first-degree and felony murder, the trial judge submitted a single verdict form. Neither party objected to the judge's instructions or the wording of the verdict forms submitted to the jury. The jury found Davis guilty of first-degree felony murder, aggravated robbery, and aggravated arson. Davis appeals.

Davis contends the trial judge's instruction to the jury improperly added an additional allegation that the aggravated robbery was committed by threat of force, an alternative method of committing that crime. Davis contends because there was insufficient evidence to support the additional allegation, he could not have been convicted for aggravated robbery by use of force as alleged by the State in its information; therefore, his convictions for felony murder and aggravated robbery should be reversed.

Count Four of the complaint states:

"And on or about the 10th day of April, 1988 A.D., in the County of Sedgwick, and State of Kansas, one Anthony L. Davis did then and there unlawfully, willfully, take the property, to-wit: United States monies, from the person of or in the presence of Willie Bryant by force against the person of Willie Bryant and by inflicting bodily harm upon a person to-wit: Willie Bryant in the course of such robbery."

K.S.A. 21-3426 defines robbery as:

"Robbery is the taking of property from the person or presence of another by *threat* of bodily harm to his person or the person of another or *by force*."

K.S.A. 21-3427 defines aggravated robbery as:

"Aggravated robbery is a robbery committed by a person who is armed with a dangerous weapon or who inflicts bodily harm upon any person in the course of such robbery."

The district judge instructed the jury as follows:

"Elements—murder in the first degree. Defendant is charged with the crime of murder in the first degree. Defendant pleads not guilty. To establish this charge each of the following claims must be proved. Defendant or someone acting in concert with him:
"(1) killed another human being, Willie Bryant,

"(a) committed maliciously,
"(b) willfully,
· "(c) deliberately and with premeditation, or
"(2) committed in the perpetration or attempt to perpetrate *any* felony,
"(3) this happened in Sedgwick County, Kansas, on or about April 10, 1988. (Emphasis added.)
"Felony Murder Rule. If the death of a human being ensues in the perpetration or attempt to perpetrate a felony dangerous to human life, then murder in the first degree is committed even though the death of a human being is not intended.
"Robbery and aggravated robbery, arson and aggravated arson are felonies dangerous to human life."

The trial judge instructed the jury on aggravated robbery as follows:

"Defendant is charged with the crime of aggravated robbery. Defendant pleads not guilty. To establish this charge each of the following claims must be proved. Defendant, or someone acting in concert with him, unlawfully, willfully:
"(1) took property from the person or presence of Willie Bryant,
"(2) *(a) by threat of bodily harm, or*
   (b) by force
"(3) (a) while armed with a dangerous weapon, or
·  (b) by inflicting bodily harm upon Willie Bryant
"(4) this happened in Sedgwick County, Kansas, on or about April 10, 1988." (Emphasis added.)

The trial judge also instructed the jury on aggravated arson, a felony. The jury was given three separate verdict forms. One form asked if the defendant was guilty or not guilty of premeditated murder or felony murder, and similar forms were given for aggravated robbery and aggravated arson.

Though he failed to object to the district judge's instructions to the jury at trial, on appeal Davis focuses on the jury instruction which added the additional method of committing aggravated robbery not charged by the State in its information. The State argues that the jury instruction on aggravated robbery by threat or force indicates only one method of committing the crime, not two. In addition, the State claims under the facts of this case there was sufficient evidence of threat and force; therefore, the instruction to the jury is valid.

In *State v. Wilson*, 220 Kan. 341, 345, 552 P.2d 931 (1976), we determined that when an accused is charged in one count of

an information with both premeditated murder and felony murder it did not matter whether some members of the jury arrived at a verdict of guilty based on proof of premeditation while others arrived at a verdict of guilty based on proof of the killer's malignant purpose. Under such circumstances the State is not required to elect between premeditated and felony murder, as K.S.A. 21-3401 establishes the single offense of murder in the first degree and alternative methods of proving that crime.

Davis argues that, because there was insufficient proof to show that the aggravated robbery had been committed by threat, under the rationale of *State v. Garcia*, 243 Kan. 662, Syl. ¶ 6, 763 P.2d 585 (1988), his convictions for aggravated robbery and felony murder must be set aside. In *Garcia*, the State alleged in its complaint that the victim was killed while the defendant was burglarizing (1) a house or (2) a truck, two separate and distinct burglaries.

In *Garcia* we discussed *Stromberg v. California*, 283 U.S. 359, 75 L. Ed. 1117, 51 S. Ct. 532 (1931), where the United States Supreme Court determined that a general verdict of guilty could not stand if the jury relied upon two or more independent grounds, one of which was insufficient. Bound by the reasoning of *Stromberg*, we acknowledged that a general verdict of guilty must be set aside if the jury was instructed that it could rely on any of two or more independent grounds of guilt and the proof of one of those crimes is insufficient. Because one of the alternative underlying crimes charged by the State, *i.e.*, burglary of the truck, was not supported by evidence, Garcia's conviction of felony murder was reversed.

Davis contends the trial court's instruction on the crime of aggravated robbery creates a question as to whether the jury found him guilty of that crime by use of threat or force. Davis reasons if there is insufficient evidence to support a conviction for aggravated robbery by threat of bodily harm, under the rationale of *Garcia*, this uncertainty requires his convictions for aggravated robbery and felony murder to be reversed.

We disagree with this reasoning. There is a distinction between *Garcia's* rationale that there must be sufficient evidence to convict for both of the separate crimes alleged in the complaint as the underlying crime for proof of felony murder and whether a de-

fendant committed the underlying crime of aggravated robbery by one of several distinct statutory methods, *i.e*, by force or threat, that constitute the crime of aggravated robbery.

When pleading a crime that may be committed by several different methods in a single-count complaint or information, the State may charge the commission of the offense in any or all of the methods specified in the statute. When the information alleges one or more methods for commission of the crime, the general rule is that the instructions should be confined to the charges contained in the information and should not be broader or narrower than the information. Instructions given in violation of the rule, however, are excused when the substantial rights of the defendant have not been prejudiced. *State v. Turbeville*, 235 Kan. 993, 997, 686 P.2d 138 (1984).

We note that Davis failed to object to the instructions and the language of the verdict forms during the trial. When an instruction or verdict form has not been objected to at trial, this court's scope of review is limited to a determination of whether the instruction or verdict form is clearly erroneous. An instruction or verdict form is clearly erroneous when a reviewing court reaches a firm conviction that if the trial error had not occurred, there was a real possibility the jury would have returned a different verdict. *State v. Houck*, 240 Kan. 130, Syl. ¶ 6, 727 P.2d 460 (1986).

In *Garcia*, we noted that in *Zant v. Stevens*, 462 U.S. 862, 77 L. Ed. 2d 235, 103 S. Ct. 2733 (1983), the United States Supreme Court reviewed *Stromberg*, which required courts to set aside general verdicts based on a record that left the reviewing court uncertain as to the actual grounds on which the jury's decision rested. In *Zant*, the United States Supreme Court explained that the *Stromberg* rule did not require that Zant's death sentence be vacated because Zant's jury did not merely return a general verdict stating that it found at least one aggravating circumstance. The *Zant* jury expressly found valid aggravating circumstances that were legally sufficient to support the death penalty. *Zant*, 462 U.S. at 881.

Jury instructions are to be considered together and read as a whole, without isolating any one instruction. If the instructions properly and fairly state the law as applied to the facts in the

case, and if the jury could not reasonably have been misled by them, then the instructions do not constitute reversible error although they may be in some small way erroneous. *State v. Morris*, 244 Kan 22, 23, 765 P.2d 1120 (1988).

The trial judge instructed the jury:

"After you have retired to the jury room, you will immediately elect a presiding juror, whose duty it is to see that your discussion goes forward in a sensible and orderly manner. The state, and the defendant, are entitled to separate, and independent, judgment of each of you. It is your duty to deliberate and reason together, and to consider the evidence, and all of the instructions of the Judge, in your deliberation. You are the exclusive judges of all questions of fact in the case.

"Appropriate verdict forms have been prepared for you. When you have arrived at a decision, you will select the form that corresponds with that decision. Your presiding juror will sign, and date, it, and it will be returned to the Court, upon direction. Each verdict must receive the approval of each member of the jury."

Even if there was insufficient evidence to prove the underlying felony of aggravated robbery by threat, under the instructions and verdict forms submitted to the jury in this case, there is no possibility that the jury would have returned a different verdict. Here, without objection, the trial court instructed the jury the felony-murder charge could be proved if the defendant committed the offense of robbery, aggravated robbery, arson, or aggravated arson, all felonies dangerous to human life.

Following the judge's instructions, the jury reviewed the evidence and found on separate verdict forms that Davis was guilty of aggravated robbery and aggravated arson. It then found that Davis was guilty of murder in the first degree by killing in the perpetration or attempt to perpetrate aggravated robbery or aggravated arson, both felonies.

Even if the instruction on aggravated robbery is clearly erroneous, Davis' conviction for felony murder is valid. A defendant's conviction for felony murder need not be vacated because of a rule requiring that a general guilty verdict be set aside if the jury was instructed that it could find the defendant guilty of felony murder on any two or more independent felonies, and one of the felonies is insufficient, if the jury expressly found a legally sufficient felony to support the murder conviction. Here, on a separate verdict form the jury unanimously found Davis guilty of

aggravated arson, a legally sufficient felony to support the conviction of felony murder.

Although there was no specific objection to the aggravated robbery instruction at trial, we may reverse the conviction for aggravated robbery if the trial court gave an instruction that is clearly erroneous. An instruction is clearly erroneous only if the reviewing court reaches a firm conviction that if the trial error had not occurred there was a real possibility the jury would have returned a different verdict. *State v. Maxwell,* 234 Kan. 393, 399, 672 P.2d 590 (1983).

Under the facts of this case, we find (1) the rationale of *Garcia* does not apply and (2) even if the error in the aggravated robbery instruction did occur there was no real possibility the jury would have returned a different verdict.

In his brief Davis contended that the trial court erred by failing to instruct the jury on voluntary intoxication. This claim of error was properly abandoned during oral argument.

The record shows that Davis' attorney advised the trial court at the beginning of the trial that a voluntary intoxication defense would neither be beneficial to his theory of defense nor would it work. After the evidence had been presented, Davis' attorney submitted three proposed jury instructions to the trial court. The instructions were consistent with his trial strategy. An instruction on voluntary intoxication was not included.

In a criminal action, a trial court must instruct the jury on the law applicable to the theories of both the prosecution and the accused when there is competent supporting evidence. *State v. Hunter,* 241 Kan. 629, 644, 740 P.2d 559 (1987). A party may not assign as error the giving of or failure to give an instruction unless he objects to the instruction stating the specific grounds for the objection. Absent such objection, an appellate court may reverse only if the trial court's failure to give the instruction was clearly erroneous. *State v. Holley,* 238 Kan. 501, 506, 712 P.2d 1214 (1986).

Because Davis did not request an instruction on voluntary intoxication, the appellate scope of review is limited to a determination of whether the failure to instruct is clearly erroneous. Under the facts of this case, there was overwhelming evidence of Davis' intent to take money from his great-grandfather. The

outcome would not have been any different if an instruction on voluntary intoxication had been given.

Affirmed.