No. 65,252

STATE OF KANSAS, *Appellee*, v. VICKY GETZ, *Appellant*.

(830 P.2d 5)

Opinion filed April 10, 1992.

*Steven R. Zinn,* assistant appellate defender, argued the cause, and *Jessica R. Kunen,* chief appellate defender, was with him on the brief for appellant.

*Michael E. Ward,* county attorney, argued the cause, and *Robert T. Stephan,* attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

ABBOTT, J.: This is a direct appeal by the defendant, Vicky Getz, from her conviction of felony theft. Getz was convicted of the theft of two horses valued at over $500. The Court of Appeals affirmed the conviction, and we accepted review.

On Friday, September 23, 1988, between 3:30 and 4:00 p.m., Forrest Paddock found two paint horses on his property. Paddock had never seen these horses before; he assumed they belonged to his neighbor, Vicky Getz, because he knew Getz often boarded horses. The residences of Paddock and Getz were just a few feet apart. After capturing the horses, Paddock walked them over to Getz' property. Getz was not home so Paddock tied up one horse in the barn and secured the other horse, who was "rather spirited," in the corral.

Paddock tried calling Getz several times and eventually reached her that evening. At trial, Paddock testified he could not remember their exact telephone conversation. He stated that after the telephone call he still assumed the horses belonged to Getz, but that Getz had not claimed the horses were hers.

Getz testified that when she returned home that evening between 5:00 and 5:30 p.m., she discovered the horses on her property. Getz stated she did not recognize the horses or remember seeing them previously. After discovering the horses, she made a couple of telephone calls in an unsuccessful attempt to discover from where the horses had come. She then received a telephone call from Paddock, who informed her that he was the one who had secured the horses on her property.

Shortly thereafter, Perry Patton, who had been living with Getz for about one month, arrived home. Getz testified that she believed the horses belonged to Patton and that she told Patton to move the horses because they already had caused damage to her property and injuries to other horses. After working to repair some of the damage, Getz went into the house and called Vicki Smith. Getz previously had sold horses to Smith and her husband, who resided in Hutchinson and were in the business of selling and buying horses. Getz testified she was selling the horses for Patton. Smith agreed to buy the two horses. They arranged for the horses to be brought to the sale barn in Hutchinson the next day.

The next morning Getz and Patton hauled the two horses to Hutchinson, where they met Smith at the sale barn. Getz and Smith unloaded the horses. Smith wrote a check in the amount of $810.40 to pay for the horses. Smith testified that she did not write in the name of the payee. Getz testified that Smith wrote

in Patton's name as the payee. Smith gave the check to Getz, who in turn gave the check to Patton.

Getz and Patton then drove to Smith's bank. The bank refused to cash the check because Smith was not an authorized signatory on the account and had failed to indicate that she signed the check on her husband's behalf. Getz and Patton drove to Smith's residence. After destroying the first check, Smith wrote a new check, which she made payable to Perry E. Patton. Smith testified that she wrote in Patton's name on the second check because his name had been written in on the first check. Getz and Patton returned to the bank, and Patton cashed the check. Getz testified that she never received any of this money.

William and Shirley Griffing own property in the same vicinity as Getz and Paddock. The Griffings own the two paint horses that were sold. The pasture in which they kept the horses was about one-half mile "as the crow flies" from Getz' property, but about two miles by road. On September 25, 1988, the Griffings noticed their two paint horses were missing. Shirley Griffing notified the Rose Hill Police and the Butler County Sheriff about the missing horses. She drove around the area for two days looking for the horses. Ginger Hampton, the Griffings' daughter, assisted her mother with the search on the evening of Tuesday, September 27, 1988. They stopped by Getz' house because Hampton remembered that Getz dealt with horses; however, Getz was not home. Later that evening, Hampton reached Getz by telephone.

Hampton testified that she introduced herself as Ginger Griffing-Hampton and that Getz acted as if she knew Hampton. Hampton told Getz their paint horses were missing and asked if Getz had seen them. According to Hampton, Getz responded that a neighbor had tied them up at her place. When Hampton offered to come get the horses, Hampton testified that Getz told her the horses were gone—they had broken out of the pen. Hampton stated she then asked for the neighbor's name, and Getz told her she could not remember the name. Hampton testified Getz then said she was sorry, but Hampton was out of luck. Getz concluded their conversation by offering to help in any way she could.

Getz testified that she did not know Hampton and that she was only trying to be friendly. Getz stated that after Hampton

described the horses, Hampton said she had talked with someone who had suggested Getz might know something about the horses. According to Getz, she told Hampton that the horses had been tied up at Getz' place, but had broken out. In the process, the horses had damaged Getz' property and injured some of her horses. Getz testified that Hampton sounded as if she did not believe her horses were capable of such damage. Getz then stated she informed Hampton that the horses were no longer there. According to Getz, Hampton expressed her thanks and hung up without leaving her name or number. Getz admitted she had not told Hampton the two paint horses had been taken to a sale barn in Hutchinson and sold. When asked why, Getz testified that she did not know who Hampton was and whether the horses really belonged to Hampton, that Hampton also had not believed that her horses were capable of damaging Getz' property and injuring her other horses, and that Hampton did not ask her.

Hampton was suspicious of Getz' story, so Hampton and her mother contacted people in the area who either knew Getz or dealt with horses. It was suggested that they check the sale barns, with Hutchinson being the closest one. Hampton's husband and mother drove to Hutchinson the next morning, September 28, 1988, and located the two paint horses in a pen behind the sale barn. The Griffings regained possession of their horses. They were informed Getz had sold the horses to Smith.

Shirley Griffing testified that Getz had been at the Griffing farm prior to September 1988. Griffing said Getz had been to their place twice with her ex-husband, who had trimmed the two paint horses. Griffing testified Getz also had stopped by the Griffings in August 1987 to see a horse advertised for sale. The horse for sale and the two paints were together in the corral. Griffing stated that Getz asked her if the two paint horses were for sale. When Griffing told her no, Getz left.

Getz testified she never had gone to the Griffings' farm to help her ex-husband trim horses. She stated she could not recall ever being at the Griffings, but may have accompanied her ex-husband to their farm when he was interested in purchasing a horse. Additionally, Getz said she never had expressed an interest in buying the two paint horses.

Getz testified Patton moved from her house a few days after this incident. Before trial, the defense attempted unsuccessfully to locate Patton.

Getz was charged with felony theft. The State contended that Getz obtained or exerted unauthorized control over the Griffings' two horses, which is a violation of K.S.A. 21-3701(a). In addition, Getz was charged in the alternative with violating K.S.A. 21-3701(d), knowingly obtaining control over stolen property. The jury found Getz guilty; however, because a general verdict form was used, the jury convicted Getz of an unspecified type of felony theft. This appeal followed.

## I. LESSER DEGREE OF THE SAME CRIME

Getz claims the trial court erred in refusing to instruct the jury on theft of lost or mislaid property, K.S.A. 21-3703, because theft of lost or mislaid property is a generically included offense. Included offenses are governed by K.S.A. 21-3107(2), which states:

"Upon prosecution for a crime, the defendant may be convicted of either the crime charged or an included crime, but not both. An included crime may be any of the following:
(a)  A lesser degree of the same crime;
(b)  an attempt to commit the crime charged;
(c)  an attempt to commit a lesser degree of the crime charged; or
(d)  a crime necessarily proved if the crime charged were proved."

The trial court found that theft of lost or mislaid property is not a lesser included offense because theft of lost or mislaid property contains an element not found in theft, namely that the property must be lost or mislaid. The trial court's ruling is based on the definition of included offenses found at K.S.A. 21-3107(2)(d). Without explanation, the court also rejected Getz' "generically included offense" argument. Accordingly, the trial court refused to give an instruction on lost or mislaid property.

The Court of Appeals, in an unpublished opinion filed August 23, 1991, rejected Getz' argument that theft of lost or mislaid property is a generically included offense. In reaching this conclusion, the Court of Appeals reviewed *State v. Gregory*, 218 Kan. 180, 542 P.2d 1051 (1975); *State v. Long*, 234 Kan. 580, 675 P.2d 832 (1984), *disapproved on other grounds State v. Keeler*, 238 Kan. 356, 710 P.2d 1279 (1985); and *State v. Gibson*, 246 Kan. 298, 787 P.2d 1176 (1990).

In *Gregory*, this court held that "manslaughter is a lesser degree of homicide than murder, and for the purposes of K.S.A. 21-3107(2)(a) is a 'lesser degree of the same crime.' " 218 Kan. at 183. Here, "the same crime" referred to in the statute is the generic crime of homicide.

In *Long*, this court held that under K.S.A. 21-3107(2)(a), "theft is a 'lesser degree of the same crime' which embraces robbery." 234 Kan. at 591-92. The relationship between the two crimes was discussed: " 'At common law, robbery consists of larceny plus two aggravating circumstances.' " 234 Kan. at 590. " 'Robbery and larceny are distinct crimes, *although in a generic sense they are but different degrees of the same crime.*' " 234 Kan. at 591.

In *Gibson*, this court rejected the argument that aggravated sexual battery is a lesser degree of the crime of rape. This conclusion was reached because "*Long* and *Gregory* . . . involved well-recognized generic crimes which had traditionally been part of the common law. [This court has] found no common-law generic crime generally recognized as 'unlawful sexual act.' " 246 Kan. at 302. A four-to-three majority of this court maintains the view that aggravated sexual battery is a separate crime from rape and that a single act can be a basis for conviction of both crimes. *State v. Mason*, 250 Kan. 393, 827 P.2d 748 (1992).

Here, the Court of Appeals determined that "theft of lost or mislaid property as defined by K.S.A. 21-3703 does not wholly come within the generic crime of larceny" because the statutory definition of K.S.A. 21-3703 is broader than the common-law definition. K.S.A. 21-3703 defines theft of lost or mislaid property as

"failure to take reasonable measures to restore lost or mislaid property to the owner by a person who has obtained control of such property, who knows or learns the identity of the owner thereof, and who intends to deprive the owner permanently of the possession, use or benefit of the property."

The statutory crime is broader than the common-law crime because

"[a]t common law, the finder of lost or mislaid property commits larceny only when he takes possession with intent to convert and at the same time knows or has a reasonable means of identifying the owner. The elements must concur at the time of taking." K.S.A. 21-3703 (Comment by Judicial Council, 1968).

The Court of Appeals noted that the theft statute, K.S.A. 21-3701, contains the common-law forms of larceny. See K.S.A. 21-3701 (Comment by Judicial Council, 1968) (The theft statute "consolidates the . . . crimes of larceny, embezzlement, false pretense, extortion, receiving stolen property and the like into a single crime of theft."). The Court of Appeals reasoned that because there was a separate statutory definition for theft of lost or mislaid property, theft of lost or mislaid property "must be broader than otherwise would come within the embrace of common law larceny."

The Court of Appeals did not comment on the following language from *Long*:

"It is doubtful that in broadening the statutory crime of robbery to include *any* taking of property from the person or presence of another the legislature intended to separate the crimes of theft and robbery into two distinct unrelated offenses. The Judicial Council comments following K.S.A. 21-3427, the aggravated robbery statute, indicate K.S.A. 21-3426 was intended to include the substance of the formerly defined crimes of first- and second-degree robbery . . . . The revision of the robbery statute, standing alone, does not indicate a legislative intent to remove robbery from its traditional role as an aggravated form of larceny or theft." 234 Kan. at 591.

The same analysis applies here. The statutory broadening of the common-law crime of theft of lost or mislaid property does not indicate the legislature's intent to remove theft of lost or mislaid property from its traditional and well-recognized role as a form of larceny.

Theft of lost or mislaid property (K.S.A. 21-3703) and theft (K.S.A. 21-3701) are both forms of the same crime of larceny. The trial court erred in refusing to give a jury instruction on theft of lost or mislaid property.

## II. EXCLUDED EVIDENCE

Perry Patton disappeared prior to trial, and efforts to locate him were unsuccessful. Getz sought permission to testify that Patton told her he had purchased the two paint horses and that he asked her help in selling the horses. Getz claimed the testimony would not be hearsay because it was not being offered to prove whether Patton had purchased the horses. It was being offered to show Getz' state of mind. A proffer of the testimony was made at trial.

K.S.A. 1991 Supp. 60-460 defines hearsay as "[e]vidence of a statement which is made other than by a witness while testifying at the hearing, offered to prove the truth of the matter stated." Generally, hearsay evidence is not competent and cannot be used to establish a fact. There are, however, certain exceptions. *State v. Oliphant*, 210 Kan. 451, Syl. ¶ 1, 502 P.2d 626 (1972). For example, "[e]xtrajudicial statements offered not to prove the truth of the statements, but to prove that the statements were made, are not inadmissible as hearsay." *Prairie State Bank v. Hoefgen*, 245 Kan. 236, Syl. ¶ 1, 777 P.2d 811 (1989); see *State v. White & Stewart*, 225 Kan. 87, 95, 587 P.2d 1259 (1978); *Oliphant*, 210 Kan. 451, Syl. ¶ 4.

In ruling against Getz, the trial court briefly discussed two cases, *State v. Wilson*, 220 Kan. 341, 552 P.2d 931 (1976), *disapproved in part State v. Quick*, 226 Kan. 308, 597 P.2d 1108 (1979), and *Oliphant*, 210 Kan. 451, that it considered analogous. In *Wilson*, the trial court excluded the defendant's testimony regarding statements made by his accomplice, whose whereabouts were not known. On appeal, this court reviewed the general rule:

"If an utterance previously made out of court is offered in evidence merely for the purpose of establishing what was then said, and not for the purpose of establishing the truth of the statement, the testimony is not hearsay. If relevant it is admissible through the person who heard it." 220 Kan. at 346.

The trial court may have misconstrued *Wilson*, in which this court held a stranger's extrajudicial confession that he committed the crime with which the defendant is charged is hearsay and inadmissible to exculpate the defendant. 220 Kan. at 346. That language, however, was held to be overbroad. See *State v. Quick*, 226 Kan. 308, 317, 597 P.2d 1108 (1979) (error to exclude an extrajudicial confession of a third party offered to establish the truth of the confession as a declaration against interest under K.S.A. 60-460[j]), *disapproved on other grounds State v. Jackson*, 244 Kan. 621, 772 P.2d 747 (1989).

In *Oliphant*, police officers were allowed to testify about statements two codefendants had made out of the defendant's presence. The statements placed the defendant within one and one-half miles of the victim's house on the day of the crime. On appeal, this court granted the defendant a new trial, stating that

"the utterances were testimonial in character despite the state's protestations that they were not being offered with that in mind. If not offered as tending to establish the defendant's presence in the community as a circumstance bearing on guilt, it would seem highly improbable that the state would have insisted on offering the statements at all." 210 Kan. at 455.

The main issue in *Oliphant* was the denial of the right to confront witnesses. This court also found the statements were offered to prove the truthfulness of the statement, *i.e.*, the defendant was present in the vicinity when the crime was committed.

Here, based on *Oliphant*, the trial court decided the proffered statement had probative value on the issue of Getz' guilt or innocence and ruled that the statement was inadmissible hearsay.

Getz claims the trial court misapplied the *Oliphant* decision. Getz maintains that *Oliphant* does not stand for the proposition that an out-of-court statement is subject to exclusion as hearsay if it is probative of the defendant's guilt or innocence. Instead, Getz contends that the statement in *Oliphant* was excluded because there was no other purpose for the admission of the statement other than to prove the truth of the matter.

The Court of Appeals agreed with Getz that the proffered testimony was not hearsay. Getz' proffered testimony was not offered to prove the truth of the matter—whether or not Patton had bought the horses. The Court of Appeals concluded that "[t]he proffered testimony was evidence of a verbal act, that is, that Patton had stated he had purchased the horses. It is relevant to the question of [Getz'] intent. All relevant evidence is admissible. K.S.A. 60-407(f)."

*People v. Canamore*, 88 Ill. App. 3d 639, 411 N.E.2d 292 (1980), is analogous to the instant case. In *Canamore*, the defendant was charged with criminal trespass to vehicles. The trial court excluded as hearsay the defendant's proffered testimony that she borrowed the car from Randy Reed upon his representation that it was his family's car. On appeal, the trial court's ruling was reversed.

"In the case at bar defendant was not seeking to prove, by means of Reed's statement, that the vehicle in question belonged to Reed's family or his brother; rather, she intended to demonstrate the effect of the statements upon her and her companion. In this manner, she could advance her reason

for being unaware the automobile was stolen and buttress the good faith of her beliefs. As the testimony was offered to demonstrate the statement were made, the trial court erred in excluding this evidence. We believe this error was prejudicial and deprived the defendant of a fair trial because it significantly impaired the defendant's theory of her case. Consequently, a new trial is required." 88 Ill. App. 3d at 641-42.

We agree with the Court of Appeals that the trial court erroneously excluded the proffered testimony.

The next question is whether the exclusion of this admissible evidence is reversible error. "The admission or the exclusion of evidence must be measured by the harmless error rule governing trial courts. (K.S.A. 60-261.)" *State v. Winston*, 214 Kan. 525, 530, 520 P.2d 1204 (1974). K.S.A. 60-261 provides, in pertinent part:

"No error in either the admission or the exclusion of evidence . . . by the court . . . is ground for granting a new trial or for setting aside a verdict . . . unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

The Court of Appeals concluded that Getz presented the essence of the erroneously excluded testimony to the jury and that this "cured" the trial court's error. Getz did testify as follows:

"Q. . . . Why were you selling these horses?
. . . .
A. To get them out of there.
Q. And were they your horses?
A. No.
Q. Did you have reason to believe they belonged to someone else?
A. Sure.
[The trial court then overruled the prosecutor's objection that the question had been asked and answered twice.]
Q. . . . Did you have reason to believe who owned the horses?
A. Sure.
Q. And who did you believe owned the horses?
A. Mr. Patton."

Getz further testified:
"Q. This money that was paid to Mr. Patton by a check, did you ever get any of this money?
A. No.
Q. If you did not get any of the money for selling the horses, why did you help Mr. Patton sell the horses?

A.   Well, I thought I was helping myself, 'cause they were a pain as of the time that they were there . . . . They had ripped down corrals, panels, and they had run over some horses that I had there. They were a nuisance."

Additionally, when the prosecutor handed Getz a photograph of the horses and asked Getz if she could identify it, Getz responded: "Yes, those are the horses that Perry [Patton] said he bought that used to belong to the Griffings." The State did not make a contemporaneous objection to any of these statements nor move to strike the statements. The trial court, however, had granted a motion in limine, and the State obtained a ruling after the above testimony that neither counsel could argue or mention the above testimony to the jury in closing arguments.

We disagree with the Court of Appeals that the trial court's error was cured. Even though the trial court refused to allow counsel to argue the evidence, the jury, during its deliberations, thought the evidence was important. The jury sent a note to the trial court inquiring whether there was testimony that Perry told Getz he had bought the horses. The trial court instructed the jury to disregard any testimony of this nature. The record is clear that the trial court intended to, and did, exclude from consideration all evidence that Getz was told by Perry he had purchased the horses and that she was helping him sell them. The defendant was prevented from presenting the issue in her opening statement, from developing it in the course of the trial, from arguing it in closing argument, and from having the jury consider it. This error is not harmless because if the excluded evidence had been admitted the jury could have reached a different result.

The Court of Appeals also held that, because the record did not include the written text of the jury's question and the trial court's response, Getz failed to furnish a record on appeal that affirmatively showed prejudicial error. The Court of Appeals reasoned that

"[i]nasmuch as it remains open to question whether the trial evidence before the jury after the trial court's response to the jury question included the meat of the proposed testimony of [Getz] that Patton told her he had purchased the horses, we are unable to conclude that [Getz] has borne her burden to make it affirmatively appear that prejudicial error requiring reversal occurred."

The portion of the trial transcript pertaining to the jury's question and the trial court's answer is not ambiguous.

"THE COURT: Counsel, just a few minutes ago the bailiff brought out a question from the jury that basically—as I recall—asked, does the record contain testimony that—of the defendant indicating that she had bought the horses from Perry Patton? Is that not correct? What—What was that, counsel?

"[DEFENSE COUNSEL]: I think the way the question was phrased, does the tape show that Vicky [Getz] testified that Perry [Patton] told her the horses were bought from Griffins [sic]?

"[PROSECUTOR]: That he bought the horses from Griffings.

"[DEFENSE COUNSEL]: That he bought the horses from Griffins [sic].

"THE COURT: Okay.

"[DEFENSE COUNSEL]: Something to that effect.

"THE COURT: Alright. In any event the note will be a part of the record. I have simply chosen to answer the question that, you are instructed to disregard any testimony of this kind—or this kind of testimony."

The trial transcript includes the "essence" of the jury's question and the court's answer. The defendant included the written question and answer in the appendix to the petition for review. We did not consider the copy because it violates Supreme Court Rule 8.03(b) (1991 Kan. Ct. R. Annot. 40) ("[T]he case shall be heard on the record . . . filed with the Court of Appeals."). The record on appeal is sufficient for this court to address whether Getz' substantial rights were violated.

If the jury had considered Getz' testimony that Patton told her he bought those horses and that she simply helped him sell the horses, the jury could have concluded that Getz did not intend to permanently deprive the Griffings of the horses. Without the intent to permanently deprive the owner of the property, a theft conviction cannot stand. "Errors which do not affirmatively appear to have prejudicially affected the substantial rights of the defendant do not require a reversal when substantial justice has been done. [Citation omitted.]" *State v. Zamora*, 247 Kan. 684, 690, 803 P.2d 568 (1990). There is a reasonable possibility the excluded testimony would have changed the result of the trial; thus, prejudicial error is shown.

Because prejudicial error was shown and because the trial court erred in refusing to instruct on theft of lost or mislaid property, the judgment of the trial court must be reversed. If the evidence

is sufficient to sustain the charges, the case will be remanded for a new trial. If the evidence is insufficient to convict, then the trial court should grant a directed verdict in favor of Getz.

## III. SUFFICIENCY OF EVIDENCE

The defendant contends the evidence was insufficient to convict her under either theory. "When the sufficiency of evidence is challenged, the standard of review on appeal is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. Baker*, 249 Kan. 431, Syl. ¶ 11, 819 P.2d 1173 (1991).

The jury returned a general verdict that did not specify the type of theft on which the jury based its decision. Getz cites *State v. Garcia*, 243 Kan. 662, 763 P.2d 585 (1988), to support her argument that the evidence must be sufficient under either subsection (a) or subsection (d) of K.S.A. 21-3701 to uphold her conviction. In *Garcia*, the State asserted that the victim was killed while the defendant was burglarizing either a house or a pickup, two separate and distinct burglaries. This court determined that a general verdict of guilty must be set aside if the jury was instructed it could rely on any of two or more independent grounds of guilt and if proof of one of those crimes is not sufficient. In *Garcia*, we held that because "one of the two alternative theories advanced by the State is not supported by sufficient evidence," namely the burglary of the pickup, "the defendant's conviction for burglary and his conviction for felony murder based upon that burglary must be reversed." 243 Kan. at 673.

In *State v. Davis*, 247 Kan. 566, 571-72, 802 P.2d 541 (1990), however, this court stated:

"There is a distinction between *Garcia's* rationale that there must be sufficient evidence to convict for both of the separate crimes alleged in the complaint as the underlying crime for proof of felony murder and whether a defendant committed the underlying crime of aggravated robbery by one of several distinct statutory methods, *i.e.*, by force or threat, that constitute the crime of aggravated robbery."

Under *Davis*, then, it does not matter whether the jury convicted Getz under K.S.A. 21-3701(a) or (d), or both.

In order to convict Getz under K.S.A. 21-3701(a), the State was required to prove that Getz obtained or exerted unauthorized control over the property with the intent to deprive the owner permanently of the possession, use, or benefit of the property. There is no evidence Getz removed the horses from the Griffings' pasture. Getz argues that the act of theft, which is not a continuing offense under *State v. Gainer*, 227 Kan. 670, 608 P.2d 968 (1980), was completed when the horses were removed; therefore, Getz' sale of the horses cannot be relied upon to establish an act of theft.

The evidence, however, shows that the jury could have found Getz obtained and exerted unauthorized control over the horses when she decided to keep them in her barn on the evening of September 23, 1988, and made an arrangement with Smith to sell the horses the next morning. Her intent to deprive the Griffings permanently of the possession was shown by circumstantial evidence. The jury could have believed that Getz sold the horses even though she knew those horses belonged to the Griffings.

In order to convict Getz under K.S.A. 21-3701(d), the State was required to prove that Getz obtained control over stolen property knowing the property to have been stolen by another with the intent to deprive the owner permanently of the possession, use, or benefit of the property. Getz argues the evidence does not support that the horses were stolen or that Getz knew the horses were stolen. Shirley Griffings testified, however, that Getz saw and wanted to purchase the two paint horses in August 1987. The Griffings could not find any signs that the horses had broken out of the pasture. Getz testified that she had no idea who owned the horses at the time she called Smith. She also testified that Patton told her he had purchased the horses. There is sufficient evidence to infer that Getz knew the horses were stolen either by Patton or by someone else from whom Patton obtained the horses.

When the evidence is viewed in a light most favorable to the prosecution, a rational factfinder could find Getz guilty beyond a reasonable doubt under either K.S.A. 21-3701(a) or (d). Therefore, the evidence was sufficient to convict Getz under either subsection of the theft statute.

Reversed and remanded for a new trial.