NOT DESIGNATED FOR PUBLICATION
No. 114,310

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SHANON P. WILLIAMS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Reno District Court; TRISH ROSE, judge. Opinion filed June 30, 2017. Convictions affirmed, sentence vacated, and case remanded with directions.

*Caroline Zuschek*, of Kansas Appellate Defender Office, for appellant.

*Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MCANANY, P.J., GREEN and BUSER, JJ.

*Per Curiam*: Shanon P. Williams appeals from his convictions and his sentences for his crimes of sexual exploitation of his stepdaugher. Williams contends: (1) there was insufficient evidence to support two of his convictions because the State did not prove that his stepdaughter was under the age of 14 years at the time of these crimes; (2) these convictions were multiplicitous; (3) the trial court erroneously admitted email conversations without proper authentication; (4) the trial court erroneously admitted these email conversations when they contained hearsay and the court gave no limiting instruction; (5) the sentencing court erred by imposing lifetime postrelease supervision to follow a life sentence; (6) the sentencing court abused its discretion by not granting a

departure; and (7) the sentencing court abused its discretion by ordering that he serve each of his life sentences and his 41-month prison sentence consecutively.

The facts leading to the charges in this case and the procedural history of the case are well known to the parties and we need not repeat them here. It suffices to say that Williams' convictions are based upon him inducing his stepdaughter to permit him to take pornographic photos of her and then posting them on a website for the purpose of distributing pornography to and trading pornography with other like-minded individuals.

After a 3-day trial, the jury convicted Williams of three counts of sexual exploitation of a child. The court denied Williams' motion for a departure sentence and imposed two consecutive life sentences without the possibility of parole for 25 years for the off-grid convictions of sexual exploitation of a child, followed by a 41-month sentence for the remaining severity level 5 conviction of sexual exploitation of a child. The court also imposed lifetime postrelease supervision. Williams' appeal brings the matter to us.

*The Sufficiency of the Evidence to Support Williams' Off-Grid Convictions—the Age of the Child-Victim*

Williams contends that the evidence was insufficient to support the jury verdict finding him guilty of two off-grid convictions of sexual exploitation of a child because the evidence did not establish that the child-victim was under 14 years of age.

The age of the child at the time of the crime is the key difference between the off-grid crime of sexual exploitation of a child (two of Williams' convictions for conduct before the child's 14th birthday) and the level 5 felony crime of sexual exploitation of a child (his third conviction for conduct after the child's 14th birthday.) If the child was between the ages of 14 and 18, the crime is punishable as a severity level 5 felony. If the

2

child was under the age of 14, the presumptive sentence is life imprisonment. See K.S.A. 2016 Supp. 21-5510(a) and (b).

In considering the sufficiency of the evidence to support a conviction, we review the evidence in the light favoring the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Laborde*, 303 Kan. 1, 6, 360 P.3d 1080 (2015). In doing so, we do not reweigh the evidence or assess the credibility of witnesses. *State v. Daws*, 303 Kan. 785, 789, 368 P.3d 1074 (2016).

A verdict may be supported by circumstantial evidence, if such evidence provides a basis from which the factfinder may reasonably infer the existence of the fact in issue. *State v. Logsdon*, 304 Kan. 3, 25, 371 P.3d 836 (2016). There is no distinction between direct and circumstantial evidence in terms of probative value. *State v. McBroom*, 299 Kan. 731, 754, 325 P.3d 1174 (2014).

Williams' off-grid crimes were alleged to have been committed between September 13, 2011, and September 12, 2012. See K.S.A. 2016 Supp. 21-5510. They are predicated upon the child-victim being less than 14 years of age. Here, the evidence established that the child, Williams' stepdaughter, was born on September 13, 1998. She turned age 14 on September 13, 2012.

On March 1, 2012, when the child was still age 13, Williams uploaded to a Russian website various photos of the child and offered to trade these photos with others. Mark Larkin of Homeland Security participated in the execution of a search warrant on Williams' home in July 2013. Larkin interviewed Williams who admitted taking photos of his stepdaughter up to 2 years earlier, which would have been when the child was under age 14. When asking about the age of the child in the photographs, Larkin asked: "So, 13?" Williams confirmed, "Yeah."

3

Williams places unjustified reliance on *State v. Perez-Rivera*, 41 Kan. App. 2d 579, 582-83, 203 P.3d 735 (2009), in which our court determined that the jury's observations of the appearance and demeanor of the victim and the fact that she had been married for 2 1/2 years were insufficient to determine that the victim was over the age of 18, an element of the crime. But here, unlike in *Perez-Rivera*, there was specific evidence introduced at trial to establish the child's age.

Williams argues further that the trading emails admitted into evidence were dated after the child's 14th birthdate, and there was evidence that Williams received a camera as a gift after the child's 14th birthdate. Williams argues that this evidence supports his theory that his stepdaughter was 14 years of age when the crimes occurred. But the jury heard the conflicting evidence and concluded otherwise. It is not our role to reweigh evidence and substitute our view of the evidence for that of the jury. Besides, Williams was also convicted of a level 5 felony for conduct occurring after his stepdaughter's 14th birthday.

Viewing the evidence in the light favoring the State, there is sufficient evidence to support a finding that Williams' stepdaughter was under the age of 14 at the time of these off-grid crimes, a necessary finding for Williams' conviction of two off-grid counts of sexual exploitation of a child.

*Multiplicity*

Williams argues that his three convictions are multiplicitous because they are based on the same underlying conduct. This is a question of law over which we have unlimited review. *State v. Belt*, 305 Kan. 381, 407, 381 P.3d 473 (2016). Allegations of multiplicity may be addressed for the first time on appeal in order to serve the ends of justice and prevent a denial of fundamental rights. *State v. Weber*, 297 Kan. 805, 809, 304 P.3d 1262 (2013).

Multiplicity is charging a single offense in several counts of a complaint. It creates the potential for multiple punishments for a single offense in violation of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Section 10 of the Kansas Constitution Bill of Rights. Thus, a defendant may not be charged in several counts of a complaint for a single offense. See *State v. Overman*, 301 Kan. 704, Syl. ¶ 4, 348 P.3d 516 (2015); *State v. Schoonover*, 281 Kan. 453, 475, 133 P.3d 48 (2006).

The key inquiry when considering whether convictions were multiplicitous is whether the convictions were for the same offense; that is, (1) do the convictions arise from the same conduct and (2) by statutory definition are there two offenses or just one? *State v. King*, 297 Kan. 955, 970, 305 P.3d 641 (2013).

In determining whether the convictions arose from the same conduct, we consider (1) whether the acts occurred at or near the same time; (2) whether the acts occurred at the same location; (3) whether there was a causal relationship between the acts, particularly whether there was an intervening event; and (4) whether a fresh impulse motivated some of the conduct. *State v. Pribble*, 304 Kan. 824, Syl. ¶ 3, 375 P.3d 966 (2016).

Here, the jury was presented with three separate charges for sexual exploitation of a child. See K.S.A. 2016 Supp. 21-5510(a). Counts I and II covered conduct during the same time period, the year before the child's 14th birthday, but the conduct charged was not the same in these counts. Count I charged Williams with using or persuading his stepdaughter, who was less than 14 years of age, to engage in sexually explicit conduct with the intent to promote a performance. See K.S.A. 2016 Supp. 21-5510(a)(1). Count II charged Williams with knowingly promoting a performance that included sexually explicit conduct by a person less than 14 years of age. See K.S.A. 2016 Supp. 21-5510(a)(4).

5

These charges are separate and distinct. Count I involved Williams persuading his stepdaughter to pose for the pornographic photos with the intent to promote a performance, that is, by displaying the photos on the Russian website. Count II involved Williams actually promoting the performance by arranging to post them on the Russian website. Counts I and II are not multiplicitous because they require proof of different conduct for a conviction.

Count III involved conduct during a different time period than the period involved in Counts I and II. Counts I and II involved Williams' conduct during the year before the child's 14th birthday. Count III covered the period after the child's 14th birthday. On this basis alone, it is clear that Count III is not multiplicitous with the previous two counts.

But Williams claims that he took photographs on only one occasion, so he should not be punished with multiple convictions for this one photo session. Nevertheless, the photos Williams took showed his stepdaughter in different parts of the house and with different items of clothing, suggesting more than one photo session. His comment on the website that the child in the photos was "13, 14" also suggests that the photographs were taken on more than one occasion. In any event, Williams' convictions cover different conduct at different times. Counts I and II relate to different conduct—persuading his stepdaughter to pose for the pornographic photos versus arranging to post them on the Russian website. Count III relates to a time period different from the time period of Counts I and II. Thus, we are not persuaded that Williams' convictions for sexual exploitation of a child are multiplicitous.

*Authentication of Emails*

Next, Williams argues that the trial court erred in admitting without proper authentication, and over his objection, email conversations on the shannagirlts email account with an unknown third party who used the name Ray. Williams argues that

6

proper authentication requires a showing that he participated in the email conversations. We review the trial court's action in admitting these emails for any abuse of discretion. *State v. Hill*, 290 Kan. 339, 364, 228 P.3d 1027 (2010). Judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) the court's action was based on an error of law; or (3) was based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015).

Before a writing may be received into evidence, it must be authenticated. K.S.A. 60-464. A party proffering a writing satisfies the authentication requirement by presenting evidence sufficient to support a finding that the writing in question is what the proponent claims. *State v. Robinson*, 303 Kan. 11, 225, 363 P.3d 875 (2015), *cert. denied* 137 S. Ct. 164 (2016), *disapproved of on other grounds by State v. Cheever*, 304 Kan. 866, 375 P.3d 979 (2016). Here, the foundation evidence would have to show that the emails were what they purport to be. This is not a high burden; our Supreme Court has characterized it as "minimal" or "slight." *Robinson*, 303 Kan. at 225.

Kansas law favors the admission of relevant evidence, no matter how slight its probative value. It is the jury's role to determine how much weight should be given to the evidence. See *State v. Carter*, 284 Kan. 312, 328, 160 P.3d 457 (2007).

Foundation evidence may be circumstantial or indirect. Circumstantial evidence may include the writing's appearance, contents, substance, internal patterns, or other distinctive characteristics. Once a writing has been properly authenticated, any conflicting evidence goes to the writing's weight, not to its admissibility. *Robinson*, 303 Kan. at 225-26.

In *Robinson*, our Supreme Court held that emails found in the defendant's possession, which were seized pursuant to a search warrant, were authenticated by the

7

law enforcement officer's testimony describing how the emails were seized. 303 Kan. at 234.

In Williams' case, foundation was established by the State's testimony that (1) Williams' stepdaughter was present when a search warrant was executed at his residence; (2) she was identified as the young girl in the pictures posted on the Russian website; (3) the authorities seized a computer found in Williams' living room, a computer which Williams had access to and control over; (4) the computer had been used to access the Russian website and to upload pornographic pictures; (5) the computer contained thousands of emails involving communications with at least 250 other email accounts; (6) the email string conversations on Williams' computer related to children engaging in sexual activity, including his stepdaughter; (7) Williams provided Larkin the passwords and credentials to sign onto the Gmail account, the email address from which the email conversations took place, and that had been used to access the Russian website; (8) Williams' computer had accessed the Gmail account; (9) emails on Williams' computer were similar to the emails on the Gmail account; and (10) a common theme of the thousands of emails on the account, including the email being authenticated, was trading in child pornography.

We conclude that the emails in question were properly authenticated. Although Williams disputed the fact that it was he who authored the email messages found on his computer, that disputed issue goes to the weight and credibility of the evidence, not its authentication or admissibility. See 303 Kan. at 226; *State v. Peoples*, 227 Kan. 127, 133, 605 P.2d 135 (1980). The admitted emails tended to prove that Williams used the shannagirlts email account to trade sexually explicit photographs of his stepdaughter.

*Emails as Hearsay*

Williams claims the email conversations admitted into evidence over his objection constituted hearsay. The trial court ruled that the email conversations did not constitute hearsay because they were not offered to prove the truth of statements made by the party with whom Williams was communicating; rather, the statements merely placed Williams' own statements in the emails in proper context.

In considering this issue, we note that all relevant evidence is admissible absent a statutory prohibition. *State v. Riojas*, 288 Kan. 379, 382, 204 P.3d 578 (2009). Evidence is relevant if it has "any tendency in reason to prove any material fact." K.S.A. 60-401(b). K.S.A. 2016 Supp. 60-460 defines hearsay as "[e]vidence of a statement which is made other than by a witness while testifying at the hearing, offered to prove the truth of the matter stated." By definition, out-of-court statements not offered to prove the truth of the matter asserted are not hearsay.

Hearsay evidence is not admissible unless it falls within one of the statutory exceptions. Whether the evidence satisfies a hearsay exception is an issue of law for us to resolve, but whether the trial court erred by admitting a statement under an applicable hearsay exception is reviewed for any abuse of discretion. *State v. Coones*, 301 Kan. 64, 80, 339 P.3d 375 (2014).

Here, the email conversations between Williams (under the email pseudonym shannagirlts) and the person known as Ray did not constitute hearsay because Ray's statements were not offered to prove their truth but to prove what Williams said and to place Williams' responses in proper context. The trial court cited *State v. Ninci*, 262 Kan. 21, 936 P.2d 1364 (1997), for the holding that statements not offered to prove the truth of the matter asserted do not constitute hearsay. See *State v. Getz*, 250 Kan. 560, 567, 830 P.2d 5 (1992).

9

In *Ninci*, the Supreme Court approved the admission of a videotape of a police interview conducted by an officer who was unavailable to testify at trial. The *Ninci* court concluded that the statements of the officer were offered for the purpose of placing the defendant's answers into an understandable context. 262 Kan. at 51.

In *Getz*, our Supreme Court held that the district court erred in excluding a conversation between the defendant and a witness who was unavailable for trial. The court stated: "'If an utterance previously made out of court is offered in evidence merely for establishing what was then said [in response], and not for establishing the truth of the statement, the testimony is not hearsay.'" 250 Kan. at 567.

Here, the email conversations with the absent Ray were properly authenticated. There is no claim that what Ray said during the conversation was true, but rather that he said it, and saying it elicited a response from Williams. Ray's statements gave context to Williams' responses. The truth that the State contended was to be found in the exchange was not Ray's remarks but Williams' statements in response; and Williams' statements in response evidenced a transaction in which Williams provided passwords that gave Ray access to photos of Williams' stepdaughter. The trial court properly admitted the email conversations into evidence.

With this, we need not address the State's other basis for admitting this evidence; that is, that the statements were admissible under the hearsay exception found in K.S.A. 2016 Supp. 60-460(i)(2) for the statements of coconspirator Ray in his conspiracy with Williams to obtain and distribute child pornography.

*Limiting Instruction for Email Evidence*

In the alternative, Williams argues that the trial court should have given the jury a limiting instruction that advised the jury that Ray's statements in the email exchange were not offered for the truth of his statements.

During the discussion of Williams' hearsay objection the trial court asked about giving a limiting instruction, but neither party took a position on whether a limiting instruction should be given. The court noted that it would "reserve any further comment" on whether to give a limiting instruction.

At the later instructions conference, Williams did not request a limiting instruction, nor did he object to its absence. Thus, we apply the clear error standard in our review of the issue. If a limiting instruction should have been given, we will reverse only if we are firmly convinced that the jury would have returned a more favorable verdict had the limiting instruction been given. See *State v. Cooper*, 303 Kan. 764, 771, 366 P.3d 232 (2016); *State v. Williams*, 295 Kan. 506, Syl. ¶¶ 4-5, 286 P.3d 195 (2012).

Williams claims prejudice but does not explain how a limiting instruction would have changed the result of the trial. The statements Williams made in the email exchange—not Ray's statements—helped prove Williams' intent to distribute a password in exchange for child pornography. The password gave Ray access to files containing pornographic photos of Williams' stepdaughter. We are satisfied that the lack of a limiting instruction did not affect the outcome of the trial. Thus, Williams has failed to show clear error requiring reversal.

*Lifetime Postrelease Supervision*

Williams correctly argues that the sentencing court ordered lifetime postrelease supervision when it had no authority to do so. Two of Williams' convictions—for Counts I and II—were for off-grid felonies. A sentencing court does not have the authority to impose lifetime postrelease supervision in conjunction with an off-grid sentence. *State v. Page*, 303 Kan. 548, 549, 363 P.3d 391 (2015); *State v. Williams*, 298 Kan. 1075, 1090, 319 P.3d 528 (2014). The order for lifetime postrelease supervision, as reflected in the journal entry, must be vacated.

*Departure Motion*

Williams argues the sentencing court abused its discretion in denying his motion for a downward durational departure because the court failed to properly consider the mitigating circumstances Williams claimed as justification for a shorter sentence.

Williams moved for a departure sentence under K.S.A. 2016 Supp. 21-6627(d)(1) based on the following claimed mitigating circumstances: (1) he had only one prior felony conviction, a nonperson felony 12 years earlier; (2) he committed the acts in this case while he was under the influence of alcohol and could not fully appreciate the nature of his actions; (3) he had the support of his family; and (4) he had been gainfully employed prior to this case and could be a productive member of society. Williams argued but did not present any evidence at his sentencing hearing to support these claimed mitigating circumstances. In denying Williams' motion, the court stated:

> "This kind of act, action is an extreme form of child abuse that leaves lifetime emotional if not physical injuries. I find the actions of the defendant abhorrent. There was, the evidence revealed the defendant basically regarded the child as an object lacking of any humanity. These offenses occurred over almost a two year period. There was

12

indication that they extended over a longer period in the testimony. One of the purposes of punishment, of the criminal justice system is pure punishment. Also protection of the public and that is the act of what I'm about to do is I'm fulfilling my [role] of protecting the public from Mr. Williams."

Under K.S.A. 2016 Supp. 21-6627(a)(1)(F) and (d)(1), the sentencing court must impose life imprisonment with a mandatory minimum sentence of 25 years on a first-time offender over the age of 18 who commits the crime of sexual exploitation of a child under the age of 14 unless the district court finds "substantial and compelling reasons, following a review of mitigating circumstances, to impose a departure." The statute lists six nonexclusive mitigating factors for departure. K.S.A. 2016 Supp. 21-6627(d)(2). We review the sentencing court's decision on Williams' departure motion for an abuse of discretion. See *State v. Floyd*, 296 Kan. 685, 687, 294 P.3d 318 (2013).

Under K.S.A. 2016 Supp. 21-6627(d)(1), the sentencing court must weigh the claimed mitigating factors to determine whether they collectively justify a more lenient sentence. See *State v. Beaman*, 295 Kan. 853, 866, 286 P.3d 876 (2012). This weighing of claimed mitigating factors must be done without regard to any aggravating factors. See *State v. Jolly*, 301 Kan. 313, Syl. ¶ 5, 342 P.3d 935 (2015).

In *Jolly*, our Supreme Court clarified the two-step process a sentencing court must apply in evaluating a defendant's motion for departure:

"[T]he sentencing court first [reviews] the mitigating circumstances without any attempt to weigh them against any aggravating circumstances. Then, in considering the facts of the case, the court determines whether the mitigating circumstances rise to the level of substantial and compelling reasons to depart from the otherwise mandatory sentence." 301 Kan. 313, Syl. ¶ 5.

13

K.S.A. 2016 Supp. 21-6627(d)(1) "makes no provision for the weighing of aggravating circumstances against the mitigating circumstances to determine if a departure should be imposed." 301 Kan. at 321. Nevertheless,

> "the facts of the case—including any egregious ones—are essential for a judge to consider in deciding if a departure is warranted based on substantial and compelling reasons. Simply stated, a judge does not sentence in a vacuum. The sentencing judge is to consider information that reasonably might bear on the proper sentence for a particular defendant, given the crime committed, including the manner or way in which an offender carried out the crime." 301 Kan. at 323-24.

In *State v. McCormick*, 305 Kan. 43, 50-51, 378 P.3d 543 (2016), our Supreme Court reaffirmed its holding in *Jolly*. The court found it was required to remand the case for resentencing to remedy the error of weighing aggravating factors against mitigating factors. *McCormick*, 305 Kan. at 50-51.

Here, the record is ambiguous as to whether the sentencing court followed the procedure set out in *Jolly*. It appears that the sentencing court may have considered aggravating factors in denying Williams' departure motion. Under these circumstances, we are required to vacate Williams' sentence and remand the case for reconsideration of Williams' departure motion and for resentencing consistent with our Supreme Court's holding in *Jolly*.

*Consecutive Sentences*

Finally, Williams claims the sentencing court abused its discretion in imposing consecutive lifetime sentences rather than ordering him to serve these sentences concurrently. While we already have vacated Williams' sentences and remanded the case for resentencing, we will address this issue because it is likely to be raised at the resentencing hearing.

Consecutive sentences imposed under the Kansas Sentencing Guidelines are presumptive sentences which are not subject to review. *State v. Frecks*, 294 Kan. 738, 739, 280 P.3d 217 (2012). But a distinction is made when the sentence imposed is an off-grid sentence. In *State v. Ross*, 295 Kan. 1126, Syl. ¶ 12, 289 P.3d 76 (2012), our Supreme Court held:

> "A life sentence for an off-grid crime is not a 'presumptive sentence' as contemplated in K.S.A. 21-4703(q) because imposition of the life sentence was not arrived at by applying the applicable grid block of the sentencing guidelines. Accordingly. when a defendant is convicted of both an off-grid crime and an on-grid crime and the district court orders the presumptive sentence for the on-grid crime to run consecutive to the life sentence for the off-grid crime, the resulting controlling sentence is not entirely a 'presumptive sentence' as defined in K.S.A. 21-4703(q). Thus, K.S.A. 21-4721(c) does not prevent a defendant from challenging a district court's decision to impose consecutive sentences in a multiple conviction case involving both off-grid and on-grid crimes."

Nevertheless, a sentencing court that simultaneously imposes sentences for multiple convictions generally has discretion to order the sentences to be served consecutively. *State v. Morningstar*, 299 Kan. 1236, Syl. ¶ 4, 329 P.3d 1093 (2014).

Williams argues that the sentencing court abused its discretion in ordering consecutive life sentences because no reasonable person would agree with such sentences in view of the fact that perpetrators of more serious crimes often receive shorter sentences.

Here, the sentencing court stated that Williams' acts were an "extreme form of child abuse" that "leaves lifetime emotional . . . injuries." The court referred to Williams' crimes as "abhorrent" and noted that Williams regarded his stepdaughter as an object "lacking of any humanity."

The court's reasoning is supported by evidence in the record. Williams persuaded his 13-year-old stepdaughter, who suffered from autism, to pose for pornographic pictures that he traded internationally for other child pornography. On the website he described his stepdaughter as "dumb as a box of rocks." He used cigarettes to induce this child to pose for him. Williams had thousands of email contacts with at least 250 individuals regarding the trading of child pornography. Accordingly, we cannot say that no reasonable judge would have imposed the consecutive sentences imposed in this case.

Convictions affirmed, sentence vacated, and case remanded with directions; order imposing lifetime postrelease supervision is vacated.