602 So.2d 1160 (1992)
Reginald MICKEL
v.
STATE of Mississippi.
No. 89-KA-0661.
Supreme Court of Mississippi.
April 22, 1992.
Rehearing Denied July 22, 1992.
Scott Stuart, Jackson, for appellant.
Michael C. Moore, Atty. Gen., Wayne Snuggs, Asst. Atty. Gen., Jackson, Patricia W. Sproat, Sp. Asst. Atty. Gen., Columbus, for appellee.
En Banc.
ROY NOBLE LEE, Chief Justice, for the Court:
Reginald Mickel, the appellant, and Ella Simmons, Randy Thomas, and Jacqueline Williams were jointly indicted by the Grand Jury for the First Judicial District of Hinds County, Mississippi, in July of 1988, for (Count 1) willfully, unlawfully, feloniously and knowingly possessing cocaine with intent to distribute same and (Count 2) conspiracy to distribute cocaine.
Mickel was found guilty on both counts of the indictment and was sentenced to ten (10) years in the custody of the Mississippi Department of Corrections with five (5) years suspended on each count, the sentences to run concurrently. He has appealed to this Court and presents four (4) issues for discussion.
I. THE LOWER COURT ERRED IN ADMITTING INTO EVIDENCE TWO PISTOLS SEIZED DURING THE ARRESTS.
II. THE LOWER COURT ERRED IN REFUSING TO GRANT MICKEL'S REQUESTED CIRCUMSTANTIAL EVIDENCE INSTRUCTION.
III. THE LOWER COURT ERRED IN REFUSING TO ALLOW MICKEL TO TESTIFY THAT HE KNEW ABOUT THE RAID BEFOREHAND FROM STATEMENTS MADE TO HIM BY OTHERS.
IV. THE LOWER COURT ERRED IN ALLOWING A POLICE OFFICER'S TESTIMONY DESPITE DISCOVERY VIOLATIONS.
Pursuant to the Court's authority to notice plain error, we consider a fifth issue:
V. DID THE STATE PRODUCE SUFFICIENT EVIDENCE OF A CONSPIRACY TO SUPPORT THE CONVICTION?

*1161 FACTS
On June 10, 1988, Officer William Gladney of the Jackson Police Department, Vice and Narcotics Division, obtained a search warrant for apartment B-10, 333 McTyre St., in Jackson. The apartment was rented to Jacqueline Williams and Reginald Mickel, the appellant herein. Officer Gladney drove by the apartment to verify the location, and then met with other officers of the Jackson Police Department and the Mississippi Bureau of Narcotics at a nearby restaurant called C.S.'s in order to coordinate a raid on the apartment. As Gladney drove by the apartments, he saw Jacqueline Williams leaving with an unidentified male. The officers proceeded to the apartments, with Gladney taking the lead, and positioned themselves outside the door. Officer Gladney testified that while so positioned, he heard a conversation from inside the apartment.
I then heard talking inside the apartment. I heard a female say  pass me the pipe. And I heard a male inside say  we've got to get this stuff sold  I need some money. And then another male voice stated  there's plenty more where that came from.
Gladney stated that after overhearing that statement, one of the occupants of the apartment, whom he identified as Randy Thomas, came to the window and saw him outside the door, whereupon he exclaimed, "G____ d____, there's Gladney." Gladney stated that he heard running and the sound of things being knocked over from within the apartment, and then he kicked the door in and entered the apartment.
According to Gladney, the first things he noticed upon entering the apartment were two pistols lying on the dining room table. Gladney stated that four individuals were in the apartment: Ella Simmons was in the living room, Randy Thomas was in the bedroom and Patrick Kelly and Reginald Mickel were both trying to get through the door from the living room to the bedroom. The four were all brought under control and watched in the living room by the other officers while Gladney conducted a search of the apartment.
Gladney found a warm "crack smoking pipe" on the floor next to the dining room table and freebase and crack cocaine loose on the floor next to the table and on the kitchen floor, "like, you know, it had gotten knocked over or something." Gladney also found some small ziploc bags on the kitchen table, which the State contended were to be used to package the cocaine for sale. In the bedroom, Gladney recovered $2,310, which he claimed was all found between the mattress and box springs. Mickel claimed that only $1,700 of that was hidden in the bed and that $600 came from a small safe which belonged to Jacqueline Williams. Gladney claimed that the safe contained only some jewelry. All of the occupants of the apartment were searched, and no drugs or paraphernalia were found on any except Randy Thomas, who had cocaine hydrochloride in his pocket. Thomas stated that he had bought that cocaine earlier in the day from someone on Blair Street in Jackson.
The prosecution elicited testimony from Gladney about the two pistols that were found on the dining room table. The prosecution then brought out the pistols and showed them to defense counsel, whereupon the following exchange took place:
BY MR. MOORE (defense counsel): He is not contending this is contraband, I take it.
BY MR. HEDGEPETH (assistant D.A.): No, sir.
BY MR. MOORE: It's just that they had pistols.
BY MR. HEDGEPETH: Yes, sir.
BY MR. MOORE: Okay.
The guns were discussed further between the prosecutor and Gladney and then the prosecutor offered the guns into evidence. Defense counsel objected on the basis that the guns were being offered only to prejudice the jury. The court overruled the objection and both guns were admitted into evidence.
Edwina Ard, an analyst for the Jackson Police Department, testified that the total amount of cocaine in the package found on Randy Thomas and the package containing the cocaine off of the floor was between six *1162 and seven grams, or slightly less than one-third of an ounce. The record does not reveal the weights of each package, but Gladney testified that, in his opinion, the cocaine found on Thomas was worth about $600 and the cocaine he got off of the floor was worth about $1,000.
As part of the defense, Mickel took the stand to testify in his own behalf. His counsel asked him, "Had you ever heard that there might be a police surveillance or maybe somebody was gonna be coming to the apartment?" After Mickel answered, "Yes, I did. I heard ...," the prosecutor objected that the statement was inadmissable hearsay and the court sustained the objection.
Defense counsel made an offer of proof, which showed that if allowed, Mickel would testify that a maintenance man and a security guard had both told him that there would be a raid at the apartments that day. The purpose of the testimony, according to the defense counsel, was to show the state of mind of the defendant in order to raise an inference that Mickel would not have allowed drugs in his apartment, knowing what he did. The objection was once again sustained by the court. Mickel's defense also consisted of his contention that his father had just given him the pistols that day and he and Ella were merely comparing their bullets. As for the cocaine, Mickel claimed that he had no knowledge of the cocaine, and that the others must have taken it out while he was in the kitchen or that it all came out of Ella's purse once the officers arrived.

DISCUSSION
Mickel's contentions (1) that the testimony relating to the pistols found on a table as the officers entered the apartment should have been excluded; (2) that the court erred in refusing an instruction relating to possession of the cocaine with intent to distribute and (4) that there was a discovery violation, have no merit and will not be discussed.
Although the appellant did not specifically assign the issue of insufficient evidence of a conspiracy to support the conviction, we notice the issue as plain error. Randy Thomas and Mickel were tried together on charges of (1) possessing cocaine with the intent to distribute same and (2) conspiracy to distribute cocaine. As set forth in the facts, the statements overheard by Officer Gladney relating to a conspiracy to sell cocaine were not identified as coming from any particular person. Randy Thomas was acquitted on the conspiracy charge. See Thomas v. State, 591 So.2d 837 (Miss. 1991).
We are of the opinion that the evidence was insufficient to support count two of the indictment charging conspiracy to distribute the cocaine. The judgment as to count two is reversed and the appellant is discharged as to the conviction for said count two.
Mickel contends (3) that the lower court erred in sustaining the State's objection to the question propounded to him by counsel, "Had you ever heard that there might be a police surveillance or maybe somebody was gonna be coming to the apartment?"
This Court has stated that "if the significance of a statement is simply that it was made and there is no issue about the truth of the matter asserted, then the statement is not hearsay." Gayten v. State, 595 So.2d 409 (Miss. 1992) (citing Cooper v. State Farm Fire & Cas. Co., 568 So.2d 687, 701 (Miss. 1990).
Mickel's testimony as to the statements of a maintenance and a security guard that there would be a raid at the apartment that day was not offered to prove the truth of the matter asserted but to show the probable effect that the statements would have had on Mickel, the hearer. Under Rule 801(c) the statement was not hearsay and was properly offered to Mickel's state of mind. In the case at bar, if the jury had believed Mickel, it could have decided that, having such knowledge, Mickel would not have allowed all of the cocaine in his apartment.
We are of the opinion that the lower court committed prejudicial error in sustaining the objection to such testimony and *1163 the case is reversed and remanded for a new trial on Count One of the indictment.
COUNT ONE: REVERSED AND REMANDED.
COUNT TWO: REVERSED AND RENDERED.
HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.
BANKS, J., concurs with separate written opinion.
BANKS, Justice, concurring:
I write briefly to more fully explicate my views with regard to the conspiracy count lodged against Mickel. While I agree that Mickel is entitled to a new trial on the question of possession because of the erroneous evidentiary ruling, the question whether we should render on the conspiracy count is a bit more troubling.
Thomas v. State, 591 So.2d 837 (Miss. 1991), is distinguished from this case by the fact that there was insufficient evidence to connect Thomas to the cocaine in the apartment occupied by Mickel and another. Our decision there does not dictate today's result. It would appear, however, that on remand of the possession charge, the jury will be asked to draw an inference of possession from occupation of the apartment question. If the jury is to go forward and find an intent to distribute, that intent must be based on an inference arising from possession. Such an inference, upon an inference appears too tenuous to support a conviction. For that reason, I reluctantly concur in this aspect of the decision as well.