945 P.2d 367

**STATE of Arizona, Appellee,**

v.

**Donovan D. RIVERS, Appellant.**

**No. 1 CA–CR 96–0277.**

Court of Appeals of Arizona, Division 1, Department D.

April 10, 1997.

Review Denied Oct. 21, 1997.

Grant Woods, Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, Robert S. Golden, Assistant Attorney General, Phoenix, for Appellee.

Dean Trebesch, Maricopa County Public Defender by Louise Stark, Deputy Public Defender, Phoenix, for Appellant.

## OPINION

EHRLICH, Judge.

Donovan D. Rivers ("defendant") appeals his conviction and sentence for escape in the second degree, a class 5 felony in violation of Ariz.Rev.Stat.Ann. ("A.R.S.") section 13–2503. For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

In October 1994, the defendant began participating in a program that allowed him to serve the remainder of a prison sentence while residing in his home.[1] As a condition of this home-arrest program, the defendant was subject to electronic monitoring to verify his compliance with the restrictions placed on his movement. The monitoring equipment included an ankle-bracelet transmitter and a receiver connected to the defendant's telephone. The receiver was programmed with the defendant's schedule and was designed to automatically notify a parole office computer at designated intervals if the defendant returned home on time, failed to return or returned at an unauthorized time.

As another condition of his home arrest, the defendant was required to submit to urinalysis as requested by his parole officer, Dan Shagena. On December 19, 1994, Shagena, received urinalysis results for the defendant indicating that he had used cocaine and opiates. Shagena telephoned the defendant the next day, told him that he was going to return to prison and instructed him to turn himself in on December 23.

On December 21, the receiver in the defendant's home registered a curfew violation. Shagena unsuccessfully attempted to contact the defendant by telephone that day. However, the defendant did not return the parole officer's call until December 23, at which

---

1. We view the facts in the light most favorable to sustaining the jury's verdict. *See State v. Atwood,* 171 Ariz. 576, 596, 832 P.2d 593, 613 (1992), *cert. denied,* 506 U.S. 1084, 113 S.Ct. 1058, 122 L.Ed.2d 364 (1993).

time he stated that he knew that he was "in trouble" but that he wanted to "stay out" for the holidays. Shagena instructed the defendant to turn himself in immediately but the defendant did not report until December 28, when he was taken into custody.

Upon trial, the defendant was convicted as charged for escape in the second degree. He admitted one prior felony conviction and the trial court imposed a mitigated sentence of 1.5 years. The defendant then appealed.

## DISCUSSION

### I. Admission of Evidence Concerning the Monitoring Equipment

■ At trial, the state called Loftin Owens, the parole officer who had installed the electronic-monitoring equipment in the defendant's home, and Shagena. The defendant argued that, because neither Owens nor Shagena was qualified to testify "from a scientific standpoint" about how the monitoring equipment functioned, the state was unable to demonstrate that the equipment was in proper working condition when it registered his failure to return home on December 21, 1994. See 1 M. UDALL ET AL., Law of Evidence § 102 at 215 (3d ed.1991); see also State ex rel. Collins v. Superior Court, 132 Ariz. 180, 196, 644 P.2d 1266, 1282 (1982). He therefore objected to any testimony concerning the equipment's detection of his curfew violation. We review for abuse of discretion the trial court's conclusion that the state presented sufficient foundation for this testimony. See State v. Stotts, 144 Ariz. 72, 82, 695 P.2d 1110, 1120 (1985).

The type of electronic-monitoring equipment used in this and most cases consists of a bracelet secured around the person's ankle which transmits a continuous signal and a device attached to the home telephone which receives the signal. If the ankle-bracelet is not "within range" of the telephone unit at a time when the individual is required to be at home, the device on the telephone signals a computer at the parole office, which then prints out an "alarm" with the person's name and identification number.[2] Owens said that he had installed the defendant's ankle-brace-

let and the unit on the telephone in a "proper and appropriate manner."

Shagena testified that the telephone unit would make random calls to the parole office throughout the day, indicating whether the defendant was home. The unit would also call when the defendant left or entered his residence. The system, to his knowledge, was "fail-safe."

In response to a question from a juror asking him to explain "random call-backs," Shagena elaborated:

Like I said earlier, the machine calls 24 hours a day, seven days a week, whether the client's home or not. It's calling to make sure the equipment is working properly, the battery is okay, it's plugged in, the phone's working.

A random call-back is just those calls. A maximum call-back would be every four hours. The only time it differs from a random call-back is if it registers a message from the client which would mean he came home, he left, something other than a random call occurred. It would force the machine to make a call.

Shagena testified that, at approximately 4:00 p.m. on December 21, 1994, the computer at the parole office registered a message from the telephone unit at the defendant's residence indicating that the defendant's curfew had begun and that he was not home. In response to the alarm, Shagena called the defendant's home and asked to speak to the defendant. When told that he was "unable" to speak with him, he left a message that the defendant needed to contact the parole office immediately. The defendant did not return the call that day.

According to Shagena, once the monitoring equipment registers a curfew violation, the telephone unit will transmit a "late enter" alarm if the person returns "a minute late or a day late." Although the defendant's ankle-bracelet was still attached when he was arrested at home several days later, Shagena testified that he did not recall having received a late-entry alarm. However, he was

---

2. The ankle-bracelet was equipped with an internal battery in the event of a power loss. If the battery became low, only intermittent signals would be sent.

unable to ascertain whether such an alarm was received because the computer printouts concerning the defendant's curfew violation had been destroyed prior to trial. Shagena did testify that the unit continued to make random call-backs after it registered the defendant's violation on December 21.

Owens acknowledged that he did not consider himself to be an "expert" on how the monitoring equipment worked; Shagena said that he knew "about as much" as Owens about how the equipment functioned. Shagena testified, however, that he had worked with approximately 200 to 300 parolees on home arrest and that he did not recall ever having received incorrect information from the equipment. He told the jury that, to the best of his knowledge, the equipment was working properly when it registered the defendant's failure to return on December 21.

No appellate court in this state has had occasion to examine the foundational requirements for the admission of evidence received from an electronic device used to monitor persons on home arrest. There is one decision from another jurisdiction addressing this issue.

In *Ly v. State*, 908 S.W.2d 598 (Tex.App. 1995), the court concluded that the state had presented sufficient foundation for the admission of a computer printout generated by an electronic device used to monitor a defendant who was on home arrest. The state sought to use the printout in a proceeding to revoke the defendant's bond because of a violation of his curfew restrictions. At the defendant's revocation proceeding, the state called the person responsible for supervising the defendant's home arrest to testify about the violation. The defendant objected, arguing that, because the witness was not familiar with the scientific principles behind the electronic-monitoring equipment, the state could not demonstrate that the equipment was reliable and that it had worked properly in his case.

The appellate court rejected the defendant's argument, noting that, "[d]uring trial, [the witness] testified to the reliability and accuracy of the electronic monitoring system." *Id.* at 601. She further testified that, on the day of the alleged violation, she contacted the company that manufactured and sold the electronic-monitoring equipment to verify that the equipment was operating properly. The court concluded that this testimony satisfied the foundational requirements for admission of the computer report generated by the equipment. The court also noted that the defendant had offered no evidence to controvert the witness' opinion that the equipment was functioning properly when it registered the violation. *Id.*

Although it did not involve the use of electronic-monitoring equipment, we also find helpful the court of appeals' decision in *United States v. Sanchez*, 829 F.2d 757 (9th Cir. 1987). The defendants in *Sanchez* argued that the government failed to establish that a forward-looking infrared device ("FLIR") attached to a surveillance aircraft was functioning properly when a United States Customs agent observed an aircraft engage in a nighttime delivery of 47 bags of marijuana to the defendants on a remote airstrip. Specifically, the defendants argued that, because the agent admitted that he "knew nothing about FLIR maintenance," the government had failed to demonstrate that the device functioned properly in their case. Rejecting the defendants' argument, the court concluded that the agent's "significant experience as a pilot in a FLIR-equipped plane" was sufficient to enable him to testify that the device "appeared to be functioning properly" at the time. *Id.* at 759. Thus, the trial court did not abuse its discretion in admitting the agent's testimony concerning the events viewed through the FLIR. *Id.*

■ Like the courts in *Ly* and *Sanchez*, we find no error in the trial court's conclusion that the state provided sufficient foundation and evidence from which the jurors could reasonably conclude that the monitoring equipment was functioning properly when it registered the defendant's curfew violation. The jury heard testimony concerning the equipment's general accuracy and reliability from Shagena. It also was informed that the equipment was correctly installed and in proper working condition on December 21, 1994. Further, other than Shagena's testimony that he did not recall receiving a notice from the equipment that

the defendant had returned home at some point before he was arrested, the defendant presented no contradictory evidence. We find no abuse of discretion in the trial court's admission of that evidence.[3]

## II. Admission of Alleged Hearsay Testimony

The defendant argues that reversible error occurred when Shagena testified that, after receiving the alarm indicating that the defendant had violated his curfew, he telephoned the defendant's residence and was told that the defendant was not there. The defendant's wife, who did not testify in accord with the anti-marital fact privilege, see A.R.S. § 13–4062, was the person giving Shagena that information. The state avoided reference to the out-of-court statement during Shagena's direct examination. However, in response to a juror's question why he had not arrested the defendant before December 28, Shagena stated:

> The machine does our surveillance. It's a 24 hour surveillance program. After I received the message that he wasn't home on the 21st and I called the residence to verify that same information and I was told he was not there—

The defendant immediately interjected a hearsay objection, which the trial court overruled. He now argues that the statement was hearsay and that its admission constituted reversible error.

■ We find no error in the trial court's admission of this evidence. Shagena's reference to the out-of-court statement was in response to a juror's inquiry as to why he or someone else "did not go personally to pick up the defendant earlier than December 28, 1995[sic]." The declarant's statement that the defendant "was not there" was offered to show why Shagena did not act more promptly, a question that had been placed directly in issue by the juror's question. "Words offered to prove the effect on the hearer are admissible when they are offered to show

their effect on one whose conduct is at issue." *State v. Hernandez,* 170 Ariz. 301, 306, 823 P.2d 1309, 1314 (App.1991); *see State v. Romanosky,* 162 Ariz. 217, 222, 782 P.2d 693, 698 (1989) ("[I]n some circumstances out-of-court declarations will not be excluded as hearsay when they are not offered to prove the truth of the matter asserted but to prove their effect upon a person whose conduct is in question, such as an arresting police officer."). Because the statement was relayed to the jury to demonstrate its effect on Shagena rather than as proof that the defendant was not at his home on December 21, it was non-hearsay. The trial court therefore properly overruled the defendant's objection.

## III. Admission of Evidence Concerning Urinalysis

■ The defendant argues that the trial court abused its discretion in permitting the state to present evidence both that he failed a urinalysis and that the test revealed cocaine and opiate use. He asserts that the evidence was not relevant and, alternatively, that, even if it was relevant, its probative value was substantially outweighed by the danger of unfair prejudice. *See* ARIZ.R.EVID. 403. We review for abuse of discretion the trial court's application of Rule 403 and its conclusion that the urinalysis result was admissible. *See State v. Atwood,* 171 Ariz. 576, 638, 832 P.2d 593, 655 (1992), *cert. denied,* 506 U.S. 1084, 113 S.Ct. 1058, 122 L.Ed.2d 364 (1993). We find none.

■ The test results were not offered to prove that the defendant was a drug user but to establish a motive for his escape from custody. As such, the results were relevant evidence. *See* ARIZ.R.EVID. 404(b). Although, as the defendant argues, the state could have demonstrated his motive for escape by establishing simply that his parole officer had informed him that he was in violation of the conditions of his home arrest and that he was going to be taken into custody, we do not believe that the trial court

---

3. The defendant cites *Frye v. United States,* 293 F. 1013 (D.C.Cir.1923), thereby seemingly attempting to challenge the general acceptance of the electronic-monitoring equipment. At trial, however, the defendant did not complain that the equipment lacked scientific endorsement but only that Owens and Shagena lacked the requisite expertise to provide a foundation that the equipment was properly installed and operational.

abused its discretion in determining that the probative value of the more specific evidence concerning the urinalysis was not substantially outweighed by the danger of unfair prejudice.

### IV. Presentence-incarceration Credit

The defendant argues that the trial court failed to credit him with 42 days of presentence-incarceration credit pursuant to A.R.S. section 13–709(B). Specifically, he claims that he is entitled to credit for those days spent in custody between September 21, the date he was arraigned on the escape charge, and November 2, 1995, the date identified on his presentence report as the "date incarcerated."

On September 21, 1995, the defendant was in custody pursuant to the offense for which he had been on home arrest. On that date, he was arrested and arraigned on the escape charge. On the same day, the trial court released the defendant from custody on the escape charge and remanded him to custody on the other case. The defendant next was incarcerated for the escape charge on November 2, 1995.

Section 13–709(B) entitles a defendant to credit for "[a]ll time actually spent in custody pursuant to an offense" until he is sentenced for the offense. The defendant was not in custody for the escape offense between September 21 and November 2, 1995. Rather, he was in custody in accord with the sentence he received for his prior conviction. Accordingly, he was not entitled to any additional credit. *See State v. San Miguel,* 132 Ariz. 57, 60–61, 643 P.2d 1027, 1030–31 (App.1982).

### CONCLUSION

The defendant's conviction and sentence are affirmed.

SULT, P.J., and VOSS, J., concur.