Robert Dale KENYON, Appellant
(Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 98–285.

Supreme Court of Wyoming.

Aug. 2, 1999.

Representing Appellant: Sylvia Lee Hackl, State Public Defender; Donna D. Domonkos, Appellate Counsel; and Monique McBride, Assistant Appellate Counsel.

Representing Appellee: Gay Woodhouse, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Kimberly A. Baker, Senior Assistant Attorney General.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN and HILL, JJ.

MACY, Justice.

Appellant Robert Kenyon appeals from the judgment and sentence which was entered after he was convicted of grand larceny.

We reverse and remand.

## ISSUES

Kenyon presents the following issues for our review:

ISSUE I:

Whether the district court abused its discretion when it denied the appellant the opportunity to introduce statements made to him by his fiancee regarding consent to use the vehicle.

ISSUE II:

Whether the trial court committed reversible error when it refused to give a properly requested jury instruction on the defense theory of the case.

## FACTS

Kenyon and his fiancee, Kelly Crossfield, went on a trip around the United States during the summer of 1997. They were returning to their home in Oregon when their van broke down in Kansas. Kenyon and Crossfield could not afford to repair the van, so they placed it in storage and hitchhiked to Denver, Colorado. They planned to stay with Crossfield's sister, who lived in Denver, but she did not have room for them. Kenyon and Crossfield continued hitchhiking and eventually ended up in Cheyenne.

In early September 1997, Kenyon and Crossfield entered the Southside Furniture store. Kenyon spoke with James Sanchez, who was a store employee, and told him that he and Crossfield were hungry and did not have a place to stay. Sanchez gave Kenyon and Crossfield some money and told them that they could stay in a trailer which was parked next to the house he shared with his fiancee. Sanchez asked the couple to do some odd jobs in exchange for being allowed to use the trailer.

The trailer did not have running water; consequently, Sanchez left the back door to his house unlocked so that Kenyon and Crossfield could use the bathroom. Sanchez also allowed Kenyon and Crossfield to use his truck on several occasions. Kenyon used the truck to run errands, seek employment, and accomplish odd jobs for Sanchez.

On September 28, 1997, Sanchez allowed Kenyon to use the truck to go to his work-

site. Crossfield accompanied Kenyon in the truck. A police officer stopped Kenyon for speeding and discovered that Kenyon's driver's license had been suspended. The officer took Kenyon and Crossfield to Sanchez's home and explained the situation to Sanchez. Sanchez was upset because Kenyon had been driving his truck without a valid driver's license, and he told Kenyon that he could not use his truck any longer.

Shortly thereafter, Crossfield spoke with her children, who were living in California with their father. The children told her about a family emergency. On September 30, 1997, Crossfield and Kenyon took Sanchez's truck and went to California to retrieve Crossfield's children. Sanchez reported to the police that his truck had been stolen.

Kenyon and Crossfield were arrested in Oregon on October 12, 1997. Kenyon pleaded guilty in Oregon to one count of unauthorized use of a motor vehicle. He was subsequently extradited to Wyoming and charged with grand larceny. The trial court held a jury trial on May 11, 1998, and the jury found Kenyon guilty of the crime. The trial court entered a judgment and sentence which was consistent with the jury's verdict, and Kenyon appealed to the Wyoming Supreme Court.

## DISCUSSION

### A. Admissibility of Crossfield's Statements

Kenyon maintains that the trial court abused its discretion when it refused to allow him to testify that Crossfield told him Sanchez had given them permission to use the truck. We agree with Kenyon.

▉ A trial court has discretion in determining the admissibility of evidence, and the Wyoming Supreme Court will not disturb a trial court's evidentiary rulings unless the trial court abused its discretion. *Kolb v. State*, 930 P.2d 1238, 1245 (Wyo.1996). A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. *Hilterbrand v. State*, 930 P.2d 1248, 1250 (Wyo. 1997). In determining whether there has

been an abuse of discretion, we must decide the ultimate issue of whether or not the court could have reasonably concluded as it did. *Clark v. Gale*, 966 P.2d 431, 435 (Wyo.1998).

Kenyon was tried for the crime of grand larceny as proscribed by Wyo. Stat. Ann. § 6-3-402(a) and (c)(i) (LEXIS 1999). That statute states:

(a) A person who steals, takes and carries, leads or drives away property of another with intent to deprive the owner or lawful possessor is guilty of larceny.

. . . .

(c) Except as provided by subsection (e) of this section, larceny is:

(i) A felony punishable by imprisonment for not more than ten (10) years, a fine of not more than ten thousand dollars ($10,000.00), or both, if the value of the property is five hundred dollars ($500.00) or more; . . .

Section 6-3-402(a) and (c)(i). Wyo. Stat. Ann. § 6-3-401(a)(ii) (LEXIS 1999) states that "deprive" means:

(A) To withhold property of another permanently or for so extended a period as to appropriate a major portion of its economic value or with intent to restore only upon payment of reward or other compensation; or

(B) To dispose of the property so as to make it unlikely that the owner will recover it.

Kenyon testified on his own behalf at the trial. He was the only defense witness. The defense attorney sought to elicit testimony from Kenyon that, before they left Cheyenne, Crossfield told him Sanchez had given them permission to use his truck. The following exchange occurred at the trial:

Q. (BY [DEFENSE ATTORNEY]) Okay. In any event, there was a family emergency. You decided to leave. What actions did you take?

A. At that time I didn't take any actions. I wasn't sure exactly what to do. I forget what the date was. It was in the morning. We were going to pull the last of the garbage out to the dump with [Sanchez's] trailer. Went over there, found out

it didn't have a license plate, so that was off. [Sanchez] was at work. I don't know if [Sanchez's fiancee] had went to work or not.

[Crossfield] and I had the pickup truck. And I was in the trailer, [Crossfield] was doing something in the house. I don't know what. She come out. She said are you ready? I said to do what? She said well, let's go get the girls. She said that she had spoke with [Sanchez], that it was all right—

[PROSECUTOR]: Objection, Your Honor, irrelevant, relevance, hearsay.

THE COURT: It is technically hearsay, but it isn't offered for the truth of the matter, so go ahead.

[KENYON]: She asked me if I was ready. I said for what. And she said that she had spoke with [Sanchez], and that it was all right for us to use the truck to go and get her girls.

[PROSECUTOR]: May I have a continuing objection to conversation with [Sanchez] along these lines if it's not offered for the truth?

THE COURT: I misspoke. I'm sorry.

[DEFENSE ATTORNEY]: I'll move on.

THE COURT: The jury will be instructed that the testimony that—who did you speak to? What was her name?

[KENYON]: My fiancee is Kelly Crossfield.

THE COURT: She told you you had permission?

[KENYON]: Yes, sir.

THE COURT: I see. That will be stricken. Ladies and gentlemen, the fact that his fiancee told him he had permission will be totally disregarded by you. That's not admissible. I shouldn't have let it come before you.

[DEFENSE ATTORNEY]: Your Honor, I'd offer that as effect on the—

THE COURT: If you wish to argue, we can go over here.

The trial court conducted a bench conference to consider the admissibility of the proffered testimony. During the bench confer-

ence, the defense attorney argued that Crossfield's out-of-court statement was admissible under the exception to the hearsay rule set out in W.R.E. 803(3). The trial court ruled that Crossfield's statement did not fall within the purview of W.R.E. 803(3) and, accordingly, refused to admit the evidence under that rationale. Kenyon concedes on appeal that the trial court's ruling concerning W.R.E. 803(3) was correct. He asserts, however, that he also argued that Crossfield's out-of-court statement was admissible to show its effect on the listener—himself—and not to prove the truth of the matter asserted. His defense counsel stated:

I would further add, Your Honor, that it also falls under the exception, the common-law hearsay exception, effect on the hearer, what he thought of it. It's basic evidentiary law we learned in law school where there's four different common-law exceptions that apply as well.

One of those is the effect it has on the hearer. Now, the effect that it had on Mr. Kenyon is that he apparently had consent. So I would offer under those two ... hearsay [exceptions], both of those as directly relevant to this case. He has to be able to testify he ... apparently [had] consent. He thought he had. That's why he took this vehicle.

Although the trial court did not expressly rule on this aspect of Kenyon's argument, it obviously did not agree with Kenyon because it did not allow him to testify about Crossfield's statement.

Kenyon claims that the trial court erred by excluding Crossfield's statement because the statement was not offered to prove the truth of the matter asserted—that Sanchez had, in fact, given Crossfield permission to use the truck—but, rather, was offered to show its effect on him. He argues that the testimony would have bolstered his defense that he did not harbor the criminal intent to permanently deprive Sanchez of his truck.

The state does not respond on appeal to the substantive portion of Kenyon's argument. It asserts that Kenyon did not sufficiently notify the trial court that he was offering the evidence to show its effect on the listener rather than to prove the truth of the

matter asserted. We do not agree with the state.

Kenyon's argument was sufficiently clear to alert the trial court that he was asserting that Crossfield's out-of-court statement was admissible under two theories: (1) The statement was not hearsay because it was not offered to prove the truth of the matter asserted—it was offered to show the effect of Crossfield's statement on Kenyon; and (2) even if the statement was hearsay, it was admissible under the exception to the hearsay rule set out in W.R.E. 803(3). *See Padilla v. State,* 601 P.2d 189, 194 (Wyo.1979). We will, therefore, address the substantive issue of the admissibility of Crossfield's statement.

■ "Hearsay" is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." W.R.E. 801(c). In *Armstrong v. State,* 826 P.2d 1106, 1119 (Wyo.1992), this Court recognized that, when an out-of-court statement is not offered to prove the truth of the matter asserted but is, instead, offered for the purpose of showing its effect on the mental or emotional state of the person hearing it, it is not hearsay. Such out-of-court statements are admissible. 826 P.2d at 1119.

The Arkansas Supreme Court quoted from McCormick on Evidence to explain the general principle that an out-of-court statement offered to show its effect on the hearer is not hearsay. *Cole v. State,* 323 Ark. 8, 913 S.W.2d 255, 257 (Ark.1996).

"Some Out–of–Court Utterances Which Are Not Hearsay.

"... Utterances and writing[s] offered to show effect on hearer or reader. When it is proved that D made a statement to X, with the purpose of showing the probable state of mind thereby induced in X, such as being put on notice or having knowledge, or motive, or to show the information which X had as bearing on the reasonableness or good faith or voluntariness of the subsequent conduct of X, or anxiety, the evidence is not subject to attack as hearsay ..." McCormick on Evidence, § 249, pp. 733–34 (3d Ed.1984).

*Id.* Similarly, an Arizona Court of Appeals explained: " 'Words offered to prove the effect on the hearer are admissible when they are offered to show their effect on one whose conduct is at issue.' " *State v. Rivers,* 190 Ariz. 56, 945 P.2d 367, 371 (Ct.App.1997) (quoting *State v. Hernandez,* 170 Ariz. 301, 823 P.2d 1309, 1314 (Ct.App.1991)). The general principle that an out-of-court statement offered to show its effect on the hearer is generally admissible because it is not hearsay is widely recognized. *See, e.g., People v. Thomas,* 296 Ill.App.3d 489, 230 Ill.Dec. 790, 694 N.E.2d 1068 (1998); *Hilliard v. Schmidt,* 231 Mich.App. 316, 586 N.W.2d 263 (1998); *State v. Ninci,* 262 Kan. 21, 936 P.2d 1364 (1997); *State v. Lawrence,* 285 Mont. 140, 948 P.2d 186 (1997); *State v. Copeland,* 928 S.W.2d 828 (Mo.1996) (en banc), *cert. denied,* 519 U.S. 1126, 117 S.Ct. 981, 136 L.Ed.2d 864 (1997); *State v. Harrigan,* 662 A.2d 196 (Me. 1995); *Atkins v. State,* 523 A.2d 539 (Del. 1987); *Mickel v. State,* 602 So.2d 1160 (Miss. 1992); *Laird v. State,* 565 S.W.2d 38 (Tenn. Crim.App.1978).

The traditional credibility concerns associated with hearsay statements are not relevant when an out-of-court statement is offered to show its effect on the listener rather than to prove the truth of the matter asserted. "Testimony of out-of-court statements used other than to establish the truth of the matter asserted does not rest for its value on the credibility of the out-of-court declarant but, rather, on the credibility of the witness, who was present in court and subject to cross-examination." *People v. Shoultz,* 289 Ill.App.3d 392, 224 Ill.Dec. 885, 682 N.E.2d 446, 449 (1997); *see also Laird,* 565 S.W.2d at 41.

Other jurisdictions have considered cases with facts that are similar to those in the case at bar. In *State v. Getz,* 250 Kan. 560, 830 P.2d 5, 8 (1992), the Kansas Supreme Court reviewed Getz's conviction for stealing two horses. Getz claimed that the trial court erred when it refused to allow her to testify that Perry Patton told her he owned the horses and asked her to help him sell them. 830 P.2d at 8–10. Getz maintained that the evidence was not offered to prove the truth of the matter asserted—that Patton owned

the horses—but was offered to show her state of mind and lack of criminal intent. 830 P.2d at 8–11. The Kansas Supreme Court agreed with Getz and ruled that the trial court committed reversible error when it refused to allow her to testify about Patton's out-of-court statements. 830 P.2d at 12–13; *see also Harrigan,* 662 A.2d at 197–98.

In *People v. Canamore,* 88 Ill.App.3d 639, 44 Ill.Dec. 323, 411 N.E.2d 292 (1980), Canamore was convicted of "criminal trespass to vehicles." The trial court refused to allow her to testify that the person from whom she borrowed the car had told her that it was "a family car." 44 Ill.Dec. 323, 411 N.E.2d at 293. Canamore claimed on appeal that the statements were not offered to prove the truth of the matters asserted but were offered to show that she did not know the car was stolen. 44 Ill.Dec. 323, 411 N.E.2d at 294. An Illinois appellate court ruled that the trial court erroneously excluded the evidence. *Id.*

■ In keeping with the general principle, we conclude that the trial court in this case abused its discretion when it refused to allow Kenyon to testify concerning Crossfield's out-of-court statement that Sanchez had given them permission to use the truck. The statement was not offered to prove the truth of the matter asserted. Crossfield's statement was offered, instead, to show its effect on Kenyon's intent and subsequent conduct.

■ We must now determine whether the trial court's error was prejudicial or harmless. An error concerning the admissibility of evidence is harmless when a defendant's substantial rights were not affected. W.R.Cr.P. 52(a); *Kerns v. State,* 920 P.2d 632, 641 (Wyo.1996). "The proper inquiry is whether a reasonable probability exists that, but for the error, the verdict would have been more favorable to the defendant." *Kerns,* 920 P.2d at 641.

■ The issue of whether or not Kenyon possessed the criminal intent to permanently deprive Sanchez of his truck was strongly contested at the trial. The fact that Crossfield told Kenyon that Sanchez had given them permission to use the truck was obvi-

ously important to the determination of that issue. Although the state did not address the substantive issue, it could have argued that the trial court's refusal to allow Kenyon to testify about Crossfield's statement was not prejudicial because Kenyon was allowed to testify as follows:

> Q. Okay. Did you have any reason to believe that you could not borrow this vehicle?
>
> A. No, sir.
>
> Q. What reason did you have in borrowing the vehicle?
>
> A. At the time I was told by [Crossfield] that everything was cool, so I didn't question it.

This exchange was not sufficient to cure the trial court's error in refusing to allow Kenyon to testify directly about Crossfield's statement to him that Sanchez had given them permission to use the vehicle. Crossfield's statement that "everything was cool" is not equivalent to a statement that Sanchez had granted them permission to use the vehicle. Furthermore, the trial court originally instructed the jury to totally disregard the fact that Crossfield told Kenyon that they had permission to use the truck. This instruction was not revised when Kenyon was allowed to testify that Crossfield said "everything was cool."

The heart of Kenyon's defense was that he did not have the requisite criminal intent to be convicted of grand larceny. Taking the entire record into consideration, we conclude that there is a reasonable probability that the verdict would have been more favorable to Kenyon if the trial court had admitted Crossfield's out-of-court statement. The trial court's refusal to allow Kenyon to testify about Crossfield's out-of-court statement affected Kenyon's substantial rights, and he is, therefore, entitled to have his conviction reversed.

**B. Jury Instruction**

Kenyon contends that the trial court erred when it refused to instruct the jury on his theory of defense. We assume that, if Kenyon presents evidence supporting a legitimate theory of defense at his next trial, the

trial court will instruct the jury in accordance with Wyoming law.

Reversed and remanded.