# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2006-KA-01327-SCT

*BOBBY DEMETRIUS HARRIS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/21/2006 |
| TRIAL JUDGE: | HON. ROBERT WALTER BAILEY |
| COURT FROM WHICH APPEALED: | LAUDERDALE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | MARCUS DOUGLAS EVANS |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: DEIRDRE McCRORY |
| DISTRICT ATTORNEY: | BILBO MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 12/13/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE DIAZ, P.J., CARLSON AND RANDOLPH, JJ.**

**DIAZ, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Bobby Demetrius Harris was indicted for aggravated assault (Miss. Code Ann. § 97-3-7(2) (Rev. 2006)) against Keith Grant and aggravated domestic violence (Miss. Code Ann. § 97-3-7(4) (Rev. 2006)) against his stepson, Jermaine Davis.  A jury convicted Harris of aggravated assault, and found him guilty of the lesser included offense of simple assault on the domestic violence charge.  For the aggravated assault conviction, Harris was sentenced to ten years in custody with six years suspended and five years of post-release supervision. He was sentenced to six months in custody for the simple assault conviction, to be served

concurrently with the ten-year sentence. Aggrieved, Harris appeals to this Court. Finding that his claims on appeal are without merit, we affirm his conviction and sentence.

**FACTS**

¶2. Shortly after Hurricane Katrina, on September 5, 2005, Bobby Harris informed his estranged wife Cassandra that he planned to travel from Alabama to her home in Meridian, Mississippi. Cassandra testified that he warned her against having anyone at the house when he arrived and threatened harm to anyone there. She said that she interpreted this to mean that she was not to have any other men in her home when he got there. Cassandra also testified that Harris called her cell phone about twenty times throughout the day. Worried for her safety, she went to the police station to get a restraining order. She was told that she would not be able to obtain one until the following day.

¶3. When Harris arrived around 11:00 p.m., he called Cassandra from her front yard and asked if her electricity, which had been knocked out by the hurricane, had been restored. Although Cassandra did have power, she told Harris that it was still off. Since Harris was in the front yard, he could see her lights were on, and he became angry with Cassandra for lying to him. There were several people in the home, including Jermaine Davis, Cassandra's eighteen-year-old son; Katrina Morris, Cassandra's roommate; Katrina's two young daughters; and Keith Grant, a friend.

¶4. Harris asked Cassandra to come outside so they could talk. When Cassandra refused, explaining that there were children in the house and it was not a good time, Harris threatened to come in. He then broke a window pane in the front door with his hand, reached in, unlocked the door, and entered the house. Katrina Morris called 9-1-1. Harris grabbed

2

Cassandra and put his arm around her neck, at which point the other people in the house began to scream.

¶5.     Grant testified that when Harris grabbed Cassandra, his shirt rose up, revealing a gun tucked into the waistband of his pants. Grant punched Harris in the face and then quickly ran out of the house. Jermaine Davis ran out as well, and testified that he heard Harris say, "Y'all are fixing to die now." Once outside, the two men separated, with Grant bolting to the right and Jermaine to the left.

¶6.     Harris then recovered from the punch and began firing his weapon. Cassandra testified that Harris was standing in the yard when he was shooting, but Katrina Morris stated that she witnessed him shooting from inside the house. Specifically, Morris testified that Harris "stood on the inside of the house and aimed that gun at [Grant and Jermaine] and unloaded . . . at least five rounds."

¶7.     A short time later, Officer Kevin Boyd arrived on the scene. He found Harris in the yard talking on his cell phone and questioned him as to the whereabouts of the gun. Harris told him the gun was in his vehicle. The weapon held one live round and four spent shell casings.

¶8.     At the time of his arrest, Harris was a police officer with the York, Alabama, Police Department; the weapon he discharged was his department-issued sidearm. He had served with the Army National Guard for three years and the Army Reserve for six, and had no previous criminal record.

**DISCUSSION**

3

¶9.     The defendant raises four issues on appeal: (1) the trial court allowed the admission of impermissible hearsay; (2) there was insufficient evidence to support a conviction;[1] (3) the verdict was against the weight of the evidence; and (4) the presence of cumulative errors warrants reversal.

### I. Hearsay Testimony.

¶10.    Harris argues that the trial court erred in admitting hearsay testimony from both Cassandra and Jermaine Davis. The standard of review governing the admissibility of evidence is whether the trial court abused its discretion. *Peterson v. State*, 671 So. 2d 647, 655 (Miss.1996) (citing *Baine v. State*, 606 So. 2d 1076, 1078 (Miss. 1992); *Wade v. State*, 583 So. 2d 965, 967 (Miss. 1991)). This Court must first determine if the proper legal standards were applied. *Peterson*, 671 So. 2d at 655-56 (citing *Baine*, 606 So. 2d at 1078). If the trial court incorrectly applied the rules of evidence, resulting in prejudice to the accused, then a reversal is warranted. *Peterson*, 671 So. 2d at 656 (citing *Parker v. State*, 606 So. 2d 1132, 1137-1138 (Miss. 1992)).

### A. Cassandra's Testimony.

¶11.    Upon direct examination, Cassandra stated that when she went to the Meridian Police Department to obtain a restraining order, she was told to wait until the next day. The defense objected to the testimony on the basis of hearsay. The court overruled the objection.

---

[1]Harris argues that the trial court erred in failing to grant his motion for a new trial and/or a judgment notwithstanding the verdict on his convictions of aggravated assault and aggravated domestic violence. However, as noted above, the jury did not find Harris guilty of aggravated domestic violence.

¶12.   The Mississippi Rules of Evidence define hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." M.R.E. 801(c).  However, "[i]f the significance of a statement is simply that it was made and there is no issue about the truth of the matter asserted, then the statement is not hearsay." *Tanner v. State*, 764 So. 2d 385, 406 (Miss. 2000) (quoting **Mickel v. State**, 602 So. 2d 1160, 1162 (Miss. 1992)).

¶13.   In this case, the State was not offering this statement to prove the truth of the matter asserted, but to demonstrate why Mrs. Harris did not get a restraining order that day. Cassandra's statement was simply a recitation of what the officers told her when she sought a restraining order against Harris.  Therefore, the statement was not hearsay, and it was not error for the trial court to overrule the objection.

**B. Jermaine's Testimony.**

¶14.   Harris's stepson Jermaine offered testimony about the events leading up to the night in question.

> Q:  During that day, were you aware of any phone calls that were coming into your house or in to your mother?
>
> A:  Well, I didn't— we didn't see, but when they—they got back, that's what the—**the subject they was talking about**.

(emphasis added).  The defense counsel objected to the testimony, arguing hearsay, and the trial court overruled the objection.

¶15.   On appeal, Harris argues that this testimony went to prove "what was stated to [Cassandra] by the defendant."  However, Jermaine never testified as to what Harris might have said to Cassandra.  If anything, the testimony was evidence that phone calls had been

5

made to the house that day, and Cassandra had already testified that Harris had called several times. Because this information was already in evidence, any error could not have prejudiced the defendant. *See* ***Tanner***, 764 So. 2d at 407 (Miss. 2000) (holding that hearsay testimony regarding information already in evidence was not prejudicial to the accused). Therefore, this assignment of error is without merit.

### II. Sufficiency of the Evidence.

¶16. A motion for a directed verdict and a motion for a judgment notwithstanding the verdict challenge the sufficiency of the evidence. ***Bush v. State***, 895 So. 2d 836, 843 (Miss. 2005). When reviewing a case for sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ***Bush***, 895 So. 2d at 843 (quoting ***Jackson v. Virginia***, 443 U.S. 307, 315, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). The evidence must show "beyond a reasonable doubt that accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction." ***Bush***, 895 So. 2d at 843 (quoting ***Carr v. State***, 208 So. 2d 886, 889 (Miss. 1968)). If, keeping in mind the reasonable-doubt standard, "reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense," the evidence will be deemed to have been sufficient. ***Bush***, 895 So. 2d at 843 (quoting ***Edwards v. State***, 469 So. 2d 68, 70 (Miss. 1985)).

¶17. Harris argues that the State failed to present sufficient evidence to support his conviction of aggravated assault. He argues that the alleged victim never apprehended any danger, as Grant never saw him point or fire a weapon at him.

¶18. Harris has confused the common law definition of assault in tort, which requires the element of apprehension, with the statutory definition set forth in Mississippi Code Section 97-3-7 (2)(a) (Rev. 2006). Under the common law, assault occurs where "a person . . . acts intending to cause a harmful or offensive contact with the person of the other . . . or an imminent apprehension of such a contact." *Webb v. Jackson* 583 So. 2d 946, 951 (Miss. 1991) (quoting Restatement (Second) of Torts § 21 (1965)); *see also* Robert A. Weems and Robert M. Weems, *Mississippi Law of Torts*, § 2:1 (2002) ("the cause of action for the tort of assault protects a person's interest in being free from an imminent apprehension of a harmful or offensive bodily contact"). The criminal statute, on the other hand, does not require an apprehension of danger; a person can be convicted of aggravated assault if he is found to have attempted "to cause serious bodily injury to another, or causes such injury purposely, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life." Miss. Code Ann. § 97-3-7 (2)(a) (Rev. 2006).

¶19. The defendant admitted to discharging his weapon with the intent to scare Grant, and aggravated the conditions of the crime by employing a deadly weapon. There were discrepancies in the testimony as to whether Harris intended to harm Grant. Harris testified that he shot into the air at an angle, intending only to scare Grant. However, Cassandra and Katrina both testified that from their vantage point within the home, Harris appeared to be shooting directly toward Grant, not away from him.

¶20.    "[W]here the physical facts and circumstances in evidence materially contradict the defendant's version of what happened, the circuit court is not required to direct a verdict . . . . Rather, the matter then becomes a question for the jury." *Watts v. State*, 717 So. 2d 314, 321 (Miss. 1998) (quoting *Wetz v. State*, 503 So. 2d 803, 809 (Miss. 1987)).  It is well established that the jury is the sole judge of the credibility of the witness. *Gathright v. State*, 380 So. 2d 1276, 1278 (Miss. 1980).  "[W]hen the evidence is conflicting, the jury will be the sole judge of the credibility of witnesses and the weight and worth of their testimony. This wise rule applies with equal force to the state's witnesses and the appellant's witnesses, including the appellant himself." *Id.*

¶21.    Because there was evidence that Harris attempted "to cause serious bodily injury" to Grant, this argument is without merit.  We also find that there was sufficient evidence to support a conviction of simple assault against Davis.  Accordingly, the trial court did not err in denying the motion for a directed verdict.

### III. Weight of the Evidence.

¶22.    Harris also argues that the verdict was against the weight of the evidence. We will only disturb a jury verdict when "it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Bush*, 895 So. 2d at 844 (citing *Herring v. State*, 691 So. 2d 948, 957 (Miss. 1997)).  This Court acts as a "thirteenth juror" and views the evidence in the light most favorable to the verdict. *Bush*, 895 So. 2d at 843 (citing *Herring*, 691 So. 2d at 957).  A decision to reverse and order a new trial, "unlike a reversal based on insufficient evidence, does not mean that acquittal

8

was the only proper verdict." ***Bush***, 895 So. 2d at 844 (quoting ***McQueen v. State***, 423 So. 2d 800, 803 (Miss. 1982)).

¶23.     Viewing the evidence in the light most favorable to the verdict, the defendant is not entitled to a new trial. While there was conflicting evidence regarding Harris's intent, the weight of the evidence supports the State's claim that Harris was firing his gun at Grant. As noted above, the jury is the sole judge of the credibility of the witness. ***Gathright***, 380 So. 2d at 1278. Accordingly, the trial court did not err in denying the defendant's motion for a new trial.

### IV. Cumulative Errors.

¶24.     The defendant argues that the cumulative effect of the various errors in the trial, even if harmless alone, requires reversal and remand. "The cumulative error doctrine stems from the doctrine of harmless error . . . [which] holds that individual errors, which are not reversible in themselves, may combine with other errors to make up reversible error, where the cumulative effect of all errors deprives the defendant of a fundamentally fair trial." ***Ross v. State***, 954 So. 2d 968, 1018 (Miss. 2007) (quoting **Byrom v. State**, 863 So. 2d 836, 847 (Miss. 2003)). However, where there is no error in part, there can be no reversible error to the whole. ***Gibson v. State***, 731 So. 2d 1087, 1098 (Miss. 1998) (citing ***McFee v. State***, 511 So. 2d 130, 136) (Miss. 1987)). Because there were no errors regarding the conviction which would warrant reversal, this issue is without merit.

### CONCLUSION

¶25.     The State presented sufficient evidence to support a conviction of aggravated assault against Keith Grant and simple assault against Jermaine Davis, and viewing the evidence in

9

the light most favorable to the verdict, the defendant is not entitled to a new trial.

Additionally, because there were no errors that would warrant reversal, the judgment of the trial court is affirmed.

¶26.   **COUNT I: CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TEN (10) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.  THE EXECUTION OF THE LAST SIX (6) YEARS OF THE SENTENCE IMPOSED IN COUNT I IS STAYED AND THAT PORTION OF THE SENTENCE IS SUSPENDED AND THE APPELLANT SHALL BE RELEASED ON SUPERVISED PROBATION FOR A TERM OF FIVE (5) YEARS ,WITH CONDITIONS, UNDER THE SUPERVISION OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS.   COUNT II: CONVICTION OF SIMPLE ASSAULT AND SENTENCE OF SIX (6) MONTHS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTION, AFFIRMED. SENTENCE IN COUNT II SHALL RUN CONCURRENTLY TO THE SENTENCE IN COUNT I.**

**SMITH, C.J., WALLER, P.J., EASLEY, CARLSON, DICKINSON AND LAMAR, JJ., CONCUR.  GRAVES AND RANDOLPH, JJ., CONCUR IN RESULT ONLY.**