NOT DESIGNATED FOR PUBLICATION

No. 114,200

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MARLIN D. WILLIAMS,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JAMES R. FLEETWOOD, judge. Opinion filed December 23, 2016. Affirmed.

*Michael P. Whalen* and *Krystle M. S. Dalke*, of Law Office of Michael P. Whalen, of Wichita, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., BUSER and STANDRIDGE, JJ.

BUSER, J.:  In this habeas corpus proceeding, Marlin D. Williams contends the district court committed reversible error when it summarily denied his K.S.A. 60-1507 motion. Williams claims the district court should have granted an evidentiary hearing in order to consider whether his trial counsel provided constitutionally deficient representation for his failure to challenge the legal sufficiency of the State's charging document. Williams also faults the district court for not making sufficient findings as

1

required under Supreme Court Rule 183(f) and (j) (2015 Kan. Ct. R. Annot. 271). Finding no reversible error, we affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

On September 22, 2008, a jury convicted Williams of aggravated trafficking of a person under 18 years of age, a severity level 1 person felony, in violation of K.S.A. 21-3447(a)(2). On January 16, 2009, the district court sentenced Williams to a downward durational departure sentence of 246 months' imprisonment.

Williams filed a direct appeal contending that K.S.A. 21-3447(a)(2) is unconstitutionally overbroad and vague; he should have been charged and sentenced for the more specific crime of promoting prostitution; the prosecutor committed misconduct; and his sentence violated his constitutional rights as enunciated in *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). Finding no reversible error, our Supreme Court affirmed Williams' conviction and sentence. See *State v. Williams*, 299 Kan. 911, 913-16, 329 P.3d 400 (2014).

The relevant facts underlying Williams' conviction were detailed by our Supreme Court in its opinion:

"On May 4, 2007, a Dallas, Texas, police detective was patrolling an area known for prostitution activity when he observed a young girl walking along the street. A Ford Explorer, which the detective recognized as the vehicle of a known prostitute, pulled up near the young girl, but the young girl kept walking when she spotted the clearly marked patrol car. The girl's youthful appearance and behavior aroused the detective's suspicions, causing him to follow her to a gas station where he stopped her and asked for her name and birth date. . . . She eventually told him her real name—L.M.—and her . . . birth date—October 10, 1991. Upon learning L.M.'s true identity and that she was only 15 years of age, the detective . . . discovered L.M. had been reported as a runaway from

2

Wichita, Kansas. L.M. was transported to Dallas police headquarters for an interview. In the interview, L.M. explained she met a pimp in Wichita named 'Pressure' in late April or early May. Pressure recruited her to join his prostitution ring and then drove her from Wichita to Dallas so she could work for him. L.M. gave detectives permission to examine the phone she had with her; the detectives found a phone number with a Wichita area code labeled 'Preasure.'

"L.M. was returned to Wichita. Once there, she learned that Pressure's real name was Marlin Williams. She reported this to law enforcement officers in Wichita.

. . . .

"At trial, L.M. provided details about her first contact with Williams; her first encounter was at a party, and the second was when Williams drove to the place she was living. During this second meeting, Williams, who was accompanied by a female prostitute, recruited L.M. to join in his prostitution ring.

"L.M. explained that several weeks before she met Williams she had run away from the Wichita Children's Home. By the time L.M. met Williams, her living situation was rocky. . . . Consequently, when Williams asked her to work as a prostitute, she agreed because she 'didn't have no choice; it was just the first choice that came up.' She admitted, 'I knew what I was getting myself into.'

. . . .

"Before leaving Wichita, Williams stopped at a house. The female prostitute— whom L.M. estimated to be about 20 years of age—and L.M. stayed in the car, and L.M. asked the woman what prostituting was like, whether Williams would buy her condoms, and what he would do if she looked at anyone. Williams then took L.M. and the woman to an apartment where he told L.M. to undress so he could look at her. After the inspection, Williams drove to another location and picked up a man he called 'Casper' . . . . Before they left Wichita, Williams told L.M. she should not be working the streets because she 'is far too pretty for that' and once he had enough money she would be working in a club. Williams also told L.M., 'My ho's make money.'

"The woman and Casper accompanied Williams and L.M. to Dallas. Once they got to a hotel, Williams told L.M. to perform oral sex on him. When during the trial L.M. was asked why she obeyed, L.M. responded, 'That's just what you have to do. And I believe he said that to[o], like, . . . You got to do what I say.' Soon after Williams' demand and within hours of arriving in Dallas, Williams told L.M. the minimum amount she should charge for various sex acts and the minimum she had to make before she

3

returned to the hotel. He then gave her a beeper phone and sent her out to walk the streets.

"L.M. testified she and Williams stayed in three hotels over the next several days. After the first day, L.M. worked 10 to 12 hours a day, starting at the times Williams directed. According to L.M., she made about $1,000 per day and she gave all of that money to Williams, except for a relatively small amount of cash she had on her when she was taken into custody by the police. Williams would periodically check on her, asking her where she was and how much she had made. Every few hours she would return to the hotel to give Williams the money she had been paid and to shower. . . .

. . . .

"At trial, Williams testified in his own defense. He told the jury that he stayed at the first hotel on April 29, 2007, with a woman he met in Dallas. He denied going to Dallas with L.M., but he did admit to seeing her as he was leaving his hotel. . . . Williams indicated he then returned to Kansas and, on May 3, 2007, drove back to Dallas . . . .Williams testified that he again saw L.M., this time at the second hotel's swimming pool. She walked up and said, 'I know you from somewhere.' After some small talk, they realized they were both from Wichita and the conversation continued from there. L.M. asked him to get her some liquor, and he took her to the liquor store. While driving to the liquor store she asked for his phone number, and he gave it to her. He also gave her his nickname 'Pressure.' He testified that L.M. told him she was 19 or 20 years old." 299 Kan. at 913-16.

Shortly after the Supreme Court affirmed his conviction on direct appeal, Williams filed the pro se K.S.A. 60-1507 motion, which is the subject of this appeal. Williams alleged that his trial attorney provided constitutionally deficient representation because even though the "complaint information was fatally defective, due to [its] failure to allege that [he] committed the acts of fraud, forced labor and involuntary servitude, which are the judicial requirements of K.S.A. 21-3447(a)(2)," his trial attorney neglected to file a motion for arrest of judgment under K.S.A. 22-3502. Williams claimed that he suffered prejudice as a result of his attorney's negligence because "a timely motion for arrest of judgment would have invoked review under the stringent **'pre-Hall**' standards'" and a conviction based upon a fatally defective complaint "must be reversed '**Pre-Hall**.'"

4

Williams also filed a supplemental K.S.A. 60-1507 motion. In it, Williams explained that he filed a pro se motion to dismiss the complaint prior to trial noting that it was defective. But at the hearing on the motion his trial attorney stated, "'I[']m just going to call to the court's attention that the language with or without force, threat or coercion, it appears that we do not have that word [fraud] in there, which I'm going to suggest that we add to an amended information.'" Later, when the prosecutor filed an amended complaint that only changed the dates of the alleged crimes, Williams' trial attorney "refused to bring the issue to the court's attention that [the] essential element [of fraud] was not amended to [*sic*] the [complaint] information."

In his supplemental motion, Williams maintained the trial evidence did not support a finding that he committed fraud, because

> "[i]t is evident that the alleged victim made statements that she knew the defendant and she knew he was a pimp by the way he talked and had another white female in the car with him. The alleged victim also stated that she knew the purpose for going to Dallas Texas with the defendant was for . . . her to engage in prostitution."

In short, Williams argued that since the crime of aggravated trafficking required fraud and the evidence did not prove fraud, the jury may have returned a not guilty verdict if his trial attorney had brought the purportedly defective complaint not listing fraud to the district court's attention.

On March 23, 2015, the district court summarily denied Williams' motion, finding that he had "failed to state any grounds for which relief [could] be granted" pursuant to K.S.A. 60-1507. The district court also found that "even if the allegations were accepted on their face they pose little likelihood of having any effect on the outcome of the case."

Williams filed a timely appeal.

5

On appeal, Williams contends the district court erred when it summarily denied his K.S.A. 60-1507 motion without holding an evidentiary hearing. The State, on the other hand, urges us to affirm the district court's decision because, as a matter of law, Williams is not entitled to the relief he requests.

At the outset, a summary review of Kansas law pertinent to this appeal is necessary. District courts are required to hold an evidentiary hearing on a K.S.A. 60-1507 motion and make findings of fact and conclusions of law unless the motion, files, and records of the case conclusively show the movant is not entitled to relief. K.S.A. 60-1507(b); Supreme Court Rule 183(f) and (j).

To avoid the summary denial of a K.S.A. 60-1507 motion, a movant bears the burden of establishing entitlement to an evidentiary hearing. *Sola-Morales v. State*, 300 Kan. 875, 881, 335 P.3d 1162 (2014). To meet this burden, a movant's contentions must be more than conclusory, and either the movant must set forth an evidentiary basis to support those contentions or the basis must be evident from the record. If such a showing is made, the court is required to hold a hearing unless the motion is a "'second'" or "'successive'" motion seeking similar relief. 300 Kan. at 881. When—as in this case—the district court summarily denies a K.S.A. 60-1507 motion, an appellate court conducts a de novo review to determine whether the motion, files, and records of the case conclusively establish that the movant is not entitled to relief. 300 Kan. at 881.

Given that the crux of Williams' motion is based on the claimed ineffective assistance of trial counsel, a brief summary of the pertinent constitutional standards applicable to this issue is also in order. When a defendant's K.S.A. 60-1507 motion is premised upon an allegation of ineffective assistance of counsel, the defendant must satisfy the constitutional standards set forth in *Strickland v. Washington*, 466 U.S. 668,

6

687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). See *Thompson v. State*, 293 Kan. 704, 715, 270 P.3d 1089 (2011).

Under the *Strickland* test, the movant must establish (1) counsel's performance was deficient, *i.e.*, counsel's performance fell below an objective standard of reasonableness, considering all the circumstances, and (2) there is "'a reasonable probability'" that, but for counsel's error(s), the result of the proceeding would have been different, *i.e.*, counsel's deficient performance prejudiced the defense and deprived the defendant of a fair trial. *Fuller v. State*, 303 Kan. 478, 486, 363 P.3d 373 (2015). "'[A] reasonable probability is a probability sufficient to undermine confidence in the outcome.' [Citation omitted.]" *State v. Cheatham*, 296 Kan. 417, 432, 292 P.3d 318 (2013).

Preliminarily, Williams first claims the district court violated Supreme Court Rule 183(j) by failing to make sufficient findings of fact and conclusions of law to support its summary denial. Because of the district court's omission, Williams asks us to reverse and remand his case with directions to hold a full evidentiary hearing.

In order to provide appellate courts with an opportunity for meaningful review, Supreme Court Rule 183(j) requires district courts to make findings of fact and conclusions of law "on all issues presented" in a K.S.A. 60-1507 motion. See *Gaudina v. State*, 278 Kan. 103, 107-08, 92 P.3d 574 (2004) (remand required for compliance with Rule 183[j]; district court's findings and conclusions were insufficient to allow review of all claims following summary denial of K.S.A. 60-1507 motion); *Stewart v. State*, 30 Kan. App. 2d 380, 382, 42 P.3d 205 (2002) (boilerplate journal entries do not comply with Rule 183[j]).

Importantly, however, Williams did not object to the district court's allegedly inadequate findings of fact and conclusions of law. In order to give the district court the

7

opportunity to correct inadequacies, litigants and their counsel generally bear the responsibility of objecting to such errors and in the absence of an objection, omissions in findings will not be considered on appeal. See *State v. Herbel*, 296 Kan. 1101, 1119, 299 P.3d 292 (2013). Without an objection, we may presume the district court found all the facts necessary to support its judgment, unless the lack of specific findings precludes meaningful review. See *State v. Vaughn*, 288 Kan. 140, 143, 200 P.3d 446 (2009).

In the present appeal, any inadequacy in the district court's compliance with Supreme Court Rule 183(j) does not hinder our ability to review whether Williams was entitled to an evidentiary hearing. Our reading of the district court's order persuades us that the court found Williams' attorney was not ineffective for not filing a motion that was legally without merit. Additionally, the attorney's failure to file a motion challenging the complaint was not prejudicial because, given that it was without merit, its filing would not have changed the outcome of the proceeding. After conducting an independent review of the district court's order, Williams' motions and the case file, we conclude the findings memorialized in the district court's order are sufficient to allow us to meaningfully review Williams' issue on appeal.

Next, we consider the crux of Williams' appeal. Under the Sixth Amendment to the United States Constitution and § 10 of the Kansas Constitution Bill of Rights, a defendant is guaranteed the right to be informed of the nature and cause of the accusation against him or her. *State v. Inkelaar*, 293 Kan. 414, 433, 264 P.3d 81 (2011), *overruled on other grounds by State v. Dunn*, 304 Kan. 773, 375 P.3d 332 (2016). Accordingly, a charging document that fails to include an essential element of a charged crime is generally considered to be "'fatally defective,'" and thereby, insufficient to confer subject matter jurisdiction upon the district court to convict the defendant of the alleged offense. 293 Kan. at 433-34. See K.S.A. 22-3201.

When a K.S.A. 60-1507 movant claims that his or her trial counsel was ineffective for failing to file a motion to dismiss or arrest judgment due to an allegedly defective charging document, "the common-sense rule announced in *State v. Hall*, 246 Kan. 728, 793 P.2d 737 (1990), *overruled on other grounds by Ferguson v. State*, 276 Kan. 428, 444-45, 78 P.3d 40 (2003), is used to analyze the prejudice prong in the test for ineffective assistance of trial counsel." *Swenson v. State*, 284 Kan. 931, Syl. ¶ 4, 169 P.3d 298 (2007). In *Swenson*, our Supreme Court explained:

> "Under the common-sense rule established in *Hall*, a charging document is sufficient, even if an essential element of an offense is missing, if it would be fair to require the defendant to defend based on the charge as stated in the charging document. . . . [Therefore, i]n order to succeed on his or her ineffective assistance of counsel claim, the defendant must show that counsel's allegedly deficient conduct either: (1) prejudiced the defendant's preparation of a defense; (2) impaired the defendant's ability to plead the conviction in any subsequent prosecution; or (3) limited the defendant's substantial rights to a fair trial. [Citations omitted.]" 284 Kan. at 941.

As noted earlier, Williams was charged and convicted of the crime of aggravated trafficking. K.S.A. 21-3447(a)(2) defines the offense of aggravated trafficking as "recruiting, harboring, transporting, providing or obtaining, by any means, a person under 18 years of age knowing that the person, with or without force, fraud, threat or coercion, will be used to engage in forced labor, involuntary servitude or sexual gratification of the defendant or another."

Prior to trial, Williams filed a pro se motion to dismiss, which alleged that the charging document was fatally defective because the State failed to allege a necessary statutory element of the offense, *i.e.*, "'use[d] to engage in forced labor.'" At the hearing on Williams' motion, the prosecutor argued that because the State had chosen to proceed under the theory that Williams intended to recruit, harbor, transport, provide, or obtain by any means with or without force, threat, or coercion, the victim to *engage in sexual*

*gratification*, rather than the other purposes or methods of committing the crime, the State was not required to include all of the other possible methods of committing that offense.

The district court denied Williams' motion, finding that the complaint was not defective because aggravated trafficking may be committed by several different methods and the State need not charge the commission of the offense by listing all of the other possible theories of prosecution specified in the statute. The district judge advised Williams: "You're charged with taking this young lady down to Texas and having her for gratification of you or another, potential clients, I suppose, engage in sexual activity. . . . That fits the statute. . . . It is certainly within the State's right to charge as they have had and leave out theories."

Later, the State filed an amended information which constituted the charging document used at trial. It read:

> "[I]n the County of Sedgwick, and State of Kansas, and on or between the 5th day of April, 2007 and the 29th day of April, 2007, A.D., one MARLIN D. WILLIAMS did then and there *unlawfully, recruit, harbor, transport, provide or obtain by any means, a person*, to-wit: L.N.M., a child under eighteen (18) years of age, to-wit: fifteen (15) years of age, year of birth: 1991, *knowing the person, with or without force, threat or coercion, will be used to engage in sexual gratification of the defendant or another*[.]" (Emphasis added.)

Consistent with the amended information, the district court provided the jury with the following instruction:

> "The defendant is charged with the crime of Aggravated Trafficking. The defendant pleads not guilty.
> "To establish this charge, each of the following claims must be proved:

10

> "1. That the defendant did unlawfully recruit or transport by any means, L.N.M.;
>
> "2. That L.N.M. was a person under eighteen years of age;
>
> "3. That the defendant knew that with or without force, threat or coercion, L.N.M. would be used to engage in sexual gratification of the defendant or another; and
>
> "4. That this act occurred on or between the 5th day of April, 2007 and the 29th day of April, 2007 in Sedgwick County, Kansas."

Of note, Williams does not claim there was any variance between the charging document and the elements instruction.

As the district court found with respect to the State's omission of the phrase "used to engage in forced labor" from the charging document prior to Williams' trial—a finding Williams did not challenge on direct appeal—the words fraud, forced labor, and involuntary servitude do not represent essential *elements* of the crime of aggravated trafficking that must be plead in every criminal case. On the contrary, this language merely describes either *synonymous or redundant terms to define the same prohibited conduct* or *alternative methods by which the crime may be committed*. As our Supreme Court stated in *State v. Hemby*, 264 Kan. 542, 549-50, 957 P.2d 428 (1998) (quoting *State v. Davis*, 247 Kan. 566, 572, 802 P.2d 541 [1990]):

> "'When pleading a crime that may be committed by several different methods in a single-count complaint or information, the State may charge the commission of the offense in any or all of the methods specified in the statute. When the information alleges one or more methods for a commission of a crime, the general rule is that the instructions should be confined to the charges contained in the information and should not be broader or narrower than the information.'"

Contrary to Williams' legal argument, the State was fully entitled to omit the words fraud, forced labor, and involuntary servitude from the charging document. As detailed in the Factual and Procedural Background section, the State's theory of the case did not allege that these methods played any role in the commission of the offense. The

11

omission of these surplus words, given the State's theory of prosecution, did not make the charging document defective, but simply stated the particular means or method by which the State alleged Williams had committed the crime.

The charging document fully apprised Williams of the factual and legal nature of the State's case; therefore, it is clear that Williams' challenge to the effectiveness of his trial counsel must fail on its merits because the language used in the charging document was proper. Moreover, it did not prejudice Williams' ability to prepare a defense, impair his ability to plead the conviction in any subsequent prosecution, or limit his substantial rights to a fair trial. We hold the district court did not err when it summarily denied Williams' K.S.A. 60-1507 motion because it failed to properly allege facts which showed he was entitled to relief.

Affirmed.